JAMES E. KIMBROUGH, APPELLANT, V. MARILYN K. KIMBROUGH, APPELLEE.

422 N.W.2d 556.

Filed April 29, 1988.   No. 86-606.

John A. Wolf of Shamberg, Wolf & Bush, for appellant.

James D. Livingston of Cunningham, Blackburn, Livingston & Francis, for appellee.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and WOLF and McGINN, D. JJ.

WOLF, D.J.

This is an appeal by the petitioner husband from a decree of dissolution by the district court for Hall County, Nebraska.

After a hearing on May 6, 1986, the district court entered a decree of dissolution on June 6, 1986, which (1) dissolved the marriage of the parties; (2) granted custody of the three minor children to the mother, subject to reasonable visitation by the father; (3) ordered the father to pay child support of $300 per

month per child commencing June 6, 1986, and until each child reaches the age of 19 years; (4) ordered the father to provide major medical insurance on the minor children, with no more than $500 deductible for each child, and keep major medical insurance on the minor child Jaime past the age of majority for such child and for that child's entire lifetime; (5) divided the real and personal property of the parties, and their debts; (6) required the husband to maintain the medical insurance on the wife until the decree becomes final; (7) required the husband to pay the wife alimony in the amount of $1,000 per month commencing June 6, 1986, and continuing each month thereafter until the death or remarriage of the wife; and (8) required each party to pay his or her own costs and attorney fees.

The appellant assigns as error (1) that the trial court erred in the division of the marital property of the parties, including the failure of the court to award the husband certain requested personal property then in the possession of the wife; (2) that the child support was excessive; (3) that the alimony awarded was excessive and for an unlimited term; and (4) that the father was required to maintain medical insurance on a child past majority.

The petitioner and respondent were married in 1963 and are the parents of three children: Jeffrey, born July 7, 1970; Jaime, born November 18, 1973; and Jared, born January 12, 1976. Jaime has multiple birth defects which are a physical handicap to her and require extra care, transportation, and assistance in dressing, and she also has some problems with other bodily functions. Jaime has continuing medical problems and will have medical problems in the future.

## PROPERTY DIVISION

Petitioner husband is a doctor of veterinary medicine. The property of the parties consisted of their residence in Grand Island, a veterinary clinic building with veterinary equipment, household goods and furnishings, a 1982 Jeep, a Buick, a Honda, a camper, a boat, and their individual IRAs. There was a mortgage on the residence, a note for a loan from the wife's father, and a mortgage debt on the clinic property.

The only major dispute on valuations between the parties was the value of the veterinary building and equipment. The

husband valued the building and land at $140,000 and the veterinary equipment at $15,000. The wife valued the building and land at $160,000 and the equipment *and practice* at $90,000. The wife's valuation is apparently based on a prior statement of the husband that if he sold his building and practice he would ask $250,000. It is not appropriate to consider the value of the "practice" in making a division of assets when the computation of future child support and alimony would contemplate that the husband would continue the veterinary practice in that community. A similar question was raised in *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986), where the wife challenged the failure of the trial court to award her a share of the professional goodwill of her husband's medical practice as property division. We there held that any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity which, although relevant in determining alimony, is not a proper consideration in dividing marital property in a dissolution proceeding.

The husband was awarded the veterinary clinic building and equipment, the 1982 Jeep, the boat, and his IRA, as well as the household goods and furnishings in his possession. The wife was awarded the residence, the Honda, the camper, and her IRA. The court assigned the husband to pay the debt to the respondent's father and the loans on the clinic, while the court required the wife to assume the mortgage on the residence. Based upon values furnished to the court, the division of property does not seem unreasonable. The husband received approximately $180,000 in assets, less debts of $147,000, for a net of approximately $33,000. The wife received assets of approximately $92,000, less debts of $42,000, for a net of about $50,000. The above figures do not include any valuations for household goods and furnishings divided, because the household goods were not separately listed or valued by the parties. In the absence of evidence listing the individual items of household goods, furnishings, or other personal property, and their individual values, the court cannot be expected to make a sophisticated division thereof.

A division of property is not subject to a precise

mathematical formula. Rather, an appropriate division of marital property must turn on reasonableness and the circumstances of each particular case in light of the factors set forth in Neb. Rev. Stat. § 42-365 (Reissue 1984). *Taylor v. Taylor, supra.*

The division of property in marriage dissolution cases is initially entrusted to the sound discretion of the trial judge, which matter, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. *Earl v. Earl,* 221 Neb. 574, 379 N.W.2d 261 (1986). We find no abuse of the trial court's discretion in the division of property.

## CHILD SUPPORT

During the past few years the wife had been employed at the veterinary clinic as a receptionist and was paid a salary from the business. During the years 1983, 1984, and 1985, the business showed an average annual net profit of $19,750 before deducting the wife's salary. The evidence shows it would cost approximately $10,000 per year for a receptionist, leaving a revised net income for the business of $9,750. If all of the depreciation claimed in the business on an annual basis (approximately $18,000 per year) was added back in as income, the anticipated average gross income of the business in the future would be $27,750, with an estimated tax liability of $3,000, or a net income of $24,750. This would provide the husband $2,062 per month net income.

The evidence further supports the finding that the wife is employable, but on a limited basis because of the care of Jaime, and could reasonably earn a net income of $400 per month. Using the Nebraska child support guidelines adopted by this court, the recommended support for three children would be $862, of which the husband's share would be $722 per month. The district court for Hall County awarded $900 per month for the three children, but the extra amount is not unreasonable considering that one of the children is a handicapped child and will require additional expenditures. Further, the child support should be measured by the fact that when the oldest child is 19 in July of 1989, the child support will reduce to $600 per month, which is slightly less than the child support guidelines for two

children. For the reasons given, this court finds no error in the award of child support at the rate of $300 per month per child.

## ALIMONY

In determining whether alimony should be awarded, the trial court should consider what effect, if any, the marriage has had upon the ability of the wife to secure employment in the future and the earning capacity of the husband. The evidence shows that the wife was employed during the early marriage as a secretary-receptionist, that she was employed regularly with the veterinary clinic as a receptionist, and that she currently has some employment. Although the wife has some problem with her eye, there is no indication that this is a handicap which interferes with her employment. The two factors which mainly affect her employability are the scarcity of jobs available in the community and the amount of care she is required to provide Jaime. Alimony is not to be used simply to equalize the income of the parties or to punish one of the parties. It may be used to assist the other party during a reasonable time to bridge that period of unavailability for employment or for that period to get proper training for employment. Measuring from the date of the decree, the oldest child will be 19 in 3 years; Jaime, the handicapped child, will be 19 in 6 1/2 years; and Jared will be 19 in 8 1/2 years.

In *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984), we stated that it was an abuse of discretion for the trial court to award alimony in excess of the earning capacity of the paying party. In this case the husband, after payment of the $900-per-month child support, will have $1,162 available for his living expenses. Based upon the child support guidelines, the wife will have contributed $140 per month of her $400-per-month net income for the support of the children, leaving her $260 for her living expenses. Assuming these figures, it is apparent that an award of $1,000 alimony per month is unreasonable under the circumstances. Further, we have frequently reiterated the general rule in this state that allowances of alimony in the form of an annuity or requiring the husband to pay a fixed sum for an indefinite time are not favored. *Cole v. Cole*, 208 Neb. 562, 304 N.W.2d 398 (1981). Alimony in this case is not in lieu of property division. The

property division was favorable to the wife, and, therefore, the alimony should terminate upon the husband's death, upon the wife's death, or upon the wife's remarriage. In addition, it would be appropriate that alimony terminate 7 years from the date of the decree, which will be after Jaime's reaching the age of 19 years. We therefore modify the alimony award to the sum of $400 per month commencing July 1, 1986, and on the first day of each month thereafter for a period of 7 years, until the death of either the husband or the wife, or until the wife's remarriage, whichever shall first occur.

## MEDICAL INSURANCE COVERAGE AFTER AGE OF MAJORITY

The jurisdiction of a court in a dissolution of marriage is defined in Neb. Rev. Stat. § 42-351 (Reissue 1984). The jurisdiction as to custody and support of children is specifically limited to the custody and support of *minor* children. Thus, the order of the district court requiring the father to provide major medical insurance for Jaime's lifetime is excessive and beyond the jurisdiction of the court. Such order is modified to require the father to provide major medical insurance on the children until age 19, with no more than $500 deductible for each child.

The decree of dissolution entered by the district court on June 6, 1986, is affirmed but modified as to the amount and term of alimony, and modified to require major medical insurance to be provided by the father only during the minority of the children.

AFFIRMED AS MODIFIED.