In re the MARRIAGE OF Fred GREENBLATT, Appellee,

and

Julie Greenblatt n/k/a Julie Perlman, Appellant.

No. 88CA1563.

Colorado Court of Appeals, Div. II.

Feb. 22, 1990.

Law Offices of Jerry N. Snyder, Jerry N. Snyder and Mary L. Everstine, Denver, for appellee.

Stephen A. Kaplan, City Atty., and Clarence O. Bakken, Asst. City Atty., Denver, for appellant.

Opinion by Judge TURSI.

Julie Perlman (mother) appeals the trial court's order cancelling the obligation of Fred Greenblatt (father) to pay child support arrearages. We reverse.

On December 16, 1981, a decree of dissolution of marriage was entered dissolving the marriage between the parties and awarding custody of the parties' then 13–year–old child, Mitchell, to mother. The decree incorporated the terms of a "property settlement agreement" between the parties. Pursuant to this agreement, the parties stipulated and agreed: (1) that father would pay as child support to mother the sum of $400 per month "until further Order of Court or until said child reaches the age of 21 or is sooner emancipated"; (2) that father would "provide a reasonable and necessary college education for said minor child including room, board, books, fees, tuition and other related expenses"; and (3) that father would pay to mother "as maintenance the sum of $1,416.66 per month for a period of sixty (60) months only ... [and] that said maintenance is contractual in nature and is not subject to modification for any reason whatever; that the court shall retain no jurisdiction to modify the maintenance issue herein...."

Father complied with this decree until 1985 when Mitchell chose to live with him for a number of months. At that time, father unilaterally stopped making the monthly child support payments and never resumed them despite the fact that Mitchell subsequently moved back into his mother's home. Beginning in September - 1986, Mitchell attended college out of state. While he attended college, mother maintained his bedroom in her house for him and father, as agreed, financially supported him.

On September 16, 1987, father filed motions to modify child support and to abate the accrued child support arrearages. A hearing on the motions was held on August 26, 1988. At that time, the parties agreed that father owed $2,833 in unpaid maintenance and that the motion to modify was moot since Mitchell had become emancipated in May 1988. The parties, however, disagreed on whether father remained obligated to pay the pre-emancipation child support arrearages.

Father argued that these arrearages should be abated and that the court could relieve the obligation upon a showing of adequate equitable grounds. The court agreed with father and retroactively abated both those child support arrearages that had accrued after the filing of the motions and all other child support arrearages. The court also, *sua sponte*, ordered father to pay mother the $2,833 of maintenance arrearages in $118 installments over a twenty-four-month period.

## I.

Mother first argues that the trial court had no power or authority to cancel father's obligation to pay the accrued child support arrearages. She contends: (1) that father failed to establish, and the court did not find, the prerequisite "substantial and continuing change of circumstances" necessary, under § 14–10–122, C.R.S. (1987 Repl. Vol. 6B), to permit modification of an order awarding child support; and (2) that, in any event, the General Assembly has enacted statutes prohibiting the courts from retroactively modifying child support arrearages which accrued prior to the filing of a mo-

tion to modify such child support. We agree with both contentions.

### A.

■ Child support arrearages are debts which become final money judgments when due and not paid. *See* § 14–10–122(1)(c), C.R.S. (1989 Cum.Supp.); *In re Marriage of McCue*, 645 P.2d 854 (Colo.App.1982). These judgments may be enforced as other judgments without further action by the court. *See* § 14–10–122(1)(c). Only under certain limited circumstances may the court modify and abate these judgments. *See* § 14–10–122(1)(c); § 14–10–115, C.R.S. (1987 Repl.Vol. 6B). *See also* C.R.C.P. 59 and 60.

■ To warrant any modification or abatement of child support obligations, it must first be shown by the party seeking modification that there has been "a substantial and continuing change of circumstances." *See* § 14–10–122(1)(a), C.R.S. (1989 Cum.Supp.). In determining whether this predicate showing has been made, the trial court must apply the child support guidelines set forth in § 14–10–115. These apply to all proceedings to modify child support obligations whether filed on, prior to, or subsequent to July 10, 1987. *See* § 14–10–115(17), C.R.S. (1989 Cum.Supp.); *In re Marriage of Stone*, 749 P.2d 467 (Colo.App.1987).

Application of these guidelines must indicate at least a ten percent change in the amount of support due per month, otherwise "a substantial and continuing change of circumstances" has not been established and modification is not permitted. *See* § 14–10–122(1)(b), C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Pugliese*, 761 P.2d 277 (Colo.App.1988).

The trial court is without discretion to refuse to apply the child support guidelines in making the initial determination of whether the requisite showing has been made. It *must* weigh the evidence presented giving due consideration and thought to *all* of the statutory factors. To fail to do so is error as a matter of law. *See* § 14–10–115(3)(a) and (17), C.R.S. (1987 Repl.Vol. 6B); § 14–10–122(1)(a); *In re*

*Marriage of Pring*, 742 P.2d 343 (Colo.App. 1987).

In this case, mother urged the court to consider and apply the child support guidelines to the circumstances of this case. She argued that, considering the applicable evidence, there was no basis for modifying or abating father's child support obligation. Father's income, she pointed out, had increased according to his tax returns from $92,572.00 at the time of the decree to $102,000 at the time of the hearing. Further, according to the child support obligation worksheets prepared by mother using the child support guidelines, father's monthly obligation would have *increased* to over $900 at the time of the hearing.

The record, however, evinces no indication that the trial court considered and weighed this evidence and all of the statutory factors listed in § 14–10–115(1) in deciding to modify and abate father's child support obligation. This was error as a matter of law. *See In re Marriage of Pring, supra.*

■ Father does not dispute that the trial court failed to consider adequately the requirements in § 14–10–122 and § 14–10–115, but contends that the trial court has the independent power and authority to cancel child support arrearages if adequate grounds exist for equitable relief from such obligation. We disagree.

Father cites a number of cases supporting this contention, *see, e.g., In re Marriage of Franklin*, 634 P.2d 1032 (Colo. App.1981), but all of them arose prior to enactments of the General Assembly which, by their language and scope, circumscribed the trial court's power and authority to cancel retroactively child support arrearages on equitable grounds. *See* § 14–10–122(1)(c) (prohibiting the courts from retroactively modifying all child support arrearages except those accruing after the filing of the motion); § 14–10–115(3)(a) (requiring application of child support guidelines to actions modify child support); § 14–10–115(17) (mandating application of the child support guidelines to all child support obligations modified); and

§ 14–5–110(2), C.R.S. (1987 Repl.Vol. 6B) (providing "[n]o arrearages or judgment for support may be retroactively modified.").

A trial court may deviate from these principles on equitable grounds only when determining the amount of child support awarded. And, this may be done only if the court makes findings specifying the reasons for deviation. *See* § 14–10–115(3); *In re Marriage of English,* 757 P.2d 1130 (Colo.App.1988). Since the trial court in this case neither consulted the guidelines before modifying the decree, nor made any findings specifying its reasons for deviation, we find no merit in father's contention that the court's order was authorized on independent equitable grounds.

### B.

 Mother's second argument we address for the purpose of providing guidance on remand. By the express language of § 14–10–122(1)(a), the trial court is prohibited from retroactively modifying child support arrearages except "as to installments accruing *subsequent* to the filing of the motion for modification. . . ." (emphasis added) *See In re Marriage of Walsh,* 44 Colo.App. 502, 614 P.2d 913 (1980). Since this mandate precludes the trial court from retroactively modifying pre-filing arrearages, on remand the trial court should reinstate the mother's judgment for those child support arrearages that had accrued prior to September 16, 1987, when father filed his motion to abate.

### II.

Mother also argues that the trial court exceeded its jurisdiction in ordering father to pay the $2,833 maintenance arrearages judgment in $118 monthly installments over a twenty-four-month period. We agree. The trial court's order limited mother's collection remedies and, thus, exceeded its jurisdiction. *See Green v. Green,* 168 Colo. 303, 451 P.2d 283 (1969); *In re Marriage of Gilmore,* 672 P.2d 228 (Colo.App.1983).

The judgment of the trial court is reversed, and the cause is remanded with directions to: (1) determine the amount of child support arrearages accrued prior to September 16, 1987, and to reinstate judgment for mother thereon; (2) determine whether modification of the arrearages accruing after September 16, 1987, is warranted under § 14–10–122(1) and enter judgment accordingly; and (3) vacate its order permitting father to pay $118 per month on the maintenance arrearage.

SMITH and NEY, JJ., concur.