In re the MARRIAGE OF Deanne M. BOOKOUT, Appellee and Cross–Appellant,

and

David B. Bookout, Appellant and Cross–Appellee.

No. 90CA1636.

Colorado Court of Appeals, Div. III.

Dec. 19, 1991.

Rehearing Denied Feb. 13, 1992.

Certiorari Granted Aug. 17, 1992.

Cross–Petition for Certiorari Denied (Wife) Aug. 17, 1992.

Frey, Lach & Michaels, P.C., Susan M. Lach, Fort Collins, for appellee and cross-appellant.

Litvak and Litvak, P.C., Ronald D. Litvak, Timothy R. Mehrtens, Denver, for appellant and cross-appellee.

Opinion by Judge NEY.

In this dissolution of marriage action, David B. Bookout (husband) appeals and Deanne M. Bookout (wife) cross-appeals the permanent orders relative to maintenance, distribution of property, child support, and attorney fees and costs. We affirm in part, reverse in part, and remand for further proceedings.

Husband and wife were married for approximately fourteen years. Three children were born of the marriage. Husband is a physical therapist who has established a full-time private practice with ten employees. Wife is a high-school graduate and was employed as a secretary until the parties' first child was born. She recently became employed as an interior designer with a monthly gross income of $1,000.

Experts for each party testified as to the value of husband's practice. While each utilized a capitalization method, their opinions ranged from $294,000 to $745,000. Wife's expert based her opinion of $745,000 primarily upon the income earned in 1988 because she felt that it reflected the great growth in the business over the last few years. However, she also indicated that the value of the business using a five-year weighted average income would be $595,-000. Husband's expert used the same general approach; however, he valued the practice at $294,000 because he considered it to be much riskier because of competition and the referral nature of the business.

The trial court found that wife's expert's reasoning was more thought out and planned and, given the history of the practice demonstrating that husband was well able to secure and maintain a comfortable niche in the industry, it rejected the 100% capitalization rate used by the husband's expert. However, the court also found that the income earned by the business in 1988 was distorted to a certain extent because of various factors and, therefore, concluded that valuing the business using a five-year weighted average was more appropriate. Thus, the court determined that the practice was worth $595,000.

In concluding that an equitable division of property was appropriate, the trial court observed that husband's practice comprised over one-half of the marital property and that liquidation of most of the assets might entail substantial tax consequences. Therefore, it entered an award which, in addition to the specific assets awarded to wife, required husband to pay to wife the sum of $150,000. The court ordered that this sum be paid over a period of 15 years, with husband paying $10,000 of the principal yearly, together with interest on the unpaid balance, commencing August 1, 1991. In addition, the court awarded wife an additional sum of $10,000 to assist her in paying income taxes, attorney fees, and expert witness fees which it found amounted to $15,000.

The court further observed that wife had furnished a financial affidavit showing monthly living expenses of $9,120, and that this "statement was backed up by [her] accounting, which covered approximately 19 months" representing the period immediately prior to separation. Nevertheless, the court found that, "given the parties history and the income available to both parties," wife's reasonable needs were approximately $6,000 per month. After considering the size of the marital estate awarded to wife, her monthly living ex-

penses, the tax consequences of the temporary orders for family support, and the fact that interest on the $150,000 cash distribution would not be payable for one year, the court awarded wife temporary maintenance of $1,000 per month, payable until August 1991.

The court commented that the determination of child support presented a difficult problem because the combined income of the parties exceeded the maximum shown on the child support guidelines by over $7,000. After finding wife's income to be $2,150 per month (which included $1,000 maintenance or interest from investments) and husband's income to be $15,250 per month, the court concluded that wife contributes approximately 13% of the parties' combined income of $17,191, and husband contributes 87%.

The court then noted that the child support computed by application of the guidelines was a regressive percentage of combined gross income. Nevertheless, after finding that the net child care costs were $450 per month, it concluded that at 15% of the parties' gross income, the recommended basic child support obligation would be $2,728.75, and at 19%, it would be $3,233 per month. Then, based on the premise that wife's reasonable needs were $6,000 and that husband had the ability to assist in meeting those needs, the court summarily concluded that the amount of $4,000 per month was appropriate child support to be paid by husband.

## I.

In challenging the court's valuation of his practice by means of capitalizing his yearly earnings, husband first contends that the trial court erred in accepting the opinion of wife's expert as to his market salary. He argues that the use of a $70,000 annual income figure is not supported by sufficient evidence in the record and is inconsistent with other findings made by the court, specifically the court's finding that his income was over $15,000 per month for child support purposes. We disagree.

■ One appropriate method to determine the value of goodwill of a professional practice is accomplished by fixing the amount by which the salary level of the owner exceeds that which would have been earned as an employee by a person with similar qualifications of education, experience, and capability. If the owner's actual average income exceeds the total of the employee norm and a return on the investment in the physical assets of the business, the excess would be the basis for evaluating goodwill and is subject to a capitalization factor. *Dugan v. Dugan*, 92 N.J. 423, 457 A.2d 1 (1983).

These excess earnings represent the earnings which a business can produce over a period of time if it is operated by a disinterested manager whose aim is to maximize profits. They are computed by taking earnings from the last five to ten years, adjusting them for unreasonable salaries and perquisites, and then averaging them.

Appraisers try to determine reasonable salaries in a given industry by utilizing salary studies from trade journals or government agencies. Walzer & Gabrielson, *Valuation of Stock in Closely Held Corporations at the Time of Marriage Dissolution*, 1 J.Am.Acad. Matrimonial Law 1 at 4 (1985). Such salaries are designated the market salaries and form the base line from which the value of goodwill is determined.

■ Here, wife's expert determined that husband's market salary was $70,000 per year based upon a 1986 survey of salaries prepared by the American Physical Therapy Association. According to that study, a full-time salaried male therapist with over nine years experience as a physical therapist had a 1986 mean gross income of $43,262. In contrast, a full-time self-employed male therapist with the same length of experience was making $101,876. Wife's expert utilized the income figure for the salaried individual, added $15,000 to cover the managerial responsibilities which she felt husband would be capable of, and increased this sum by eight percent per year to reflect the increase in salaries from 1986 to 1988.

Husband contends that the expert failed to interpret properly the survey because he argues that the correct salary upon which to compute excess earnings should be that of a self-employed individual. We are not persuaded.

The weight to be accorded to the valuation techniques of an expert is for the trial court's determination, depending upon the court's assessment of the reliability of the data in a particular case. *See* CRE 703; *Stone v. Caroselli*, 653 P.2d 754 (Colo.App. 1982).

As wife's expert explained, the difference between the level of salary earned by a self-employed individual and a salaried person is primarily the build-up of goodwill in the practice. In many cases, a closely held business may pay salaries to its owners that are higher than would ordinarily be justified by the duties that they perform. R. Miles, *Basic Business Appraisal* 119 (1984).

Furthermore, wife's expert indicated that she had not relied upon husband's deposition testimony, which she was informed of prior to the hearing. Nevertheless, husband's testimony that he could earn $60,000 to $70,000 at the upper range in a physician-owned practice, together with the reasonable inferences which can be made from such testimony, supports the market salary upon which the accepted business valuation was based.

Lastly, inasmuch as the finding of income for child support purposes is mandated by statutory provisions and is not a hypothetical figure, as is the market salary, *see Valuation of Stock, supra,* at 8, we find no internal inconsistency in the court's order. Indeed, the determination of business income for purposes directly relating to the operation of the business may differ from the level of gross income that is determined to be appropriate to satisfy a child support obligation. *Report of the Colorado Commission on Child Support* (1985).

Furthermore, we note that husband has not asserted that the trial court erred in determining his income under the child support guidelines.

## II.

Next, husband notes that, in capitalizing excess income, his future income stream is valued and divided as property. Therefore, he argues that basing an order of maintenance and child support upon the same income inequitably awards wife a double recovery. We disagree.

The few courts that consider personal goodwill as nothing more than probable future earning capacity have concluded that goodwill is not a divisible marital asset. *See Kimbrough v. Kimbrough*, 228 Neb. 358, 422 N.W.2d 556 (1988); *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (1981); *see generally* A.H. Rutkin, *Family Law & Practice* § 37.05(1) (1991). However, this minority view is contrary to the law which we have adopted in this jurisdiction. *See In re Marriage of Nichols*, 43 Colo.App. 383, 606 P.2d 1314 (1979) (the value of goodwill incident to a practice is an asset acquired during the marriage).

Furthermore, the value of goodwill which is to be determined at the time of dissolution is not synonymous with a spouse's expectation of future earnings. *In re Marriage of Lukens*, 16 Wash.App. 481, 558 P.2d 279 (1976); *In re Marriage of Fortier*, 34 Cal.App.3d 384, 109 Cal.Rptr. 915 (1973). *See also Dugan v. Dugan, supra* (future earning capacity *per se* is not goodwill). Such earnings are simply a factor which are considered to decide if goodwill exists, *In re Marriage of Lopez*, 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974), and it is this latter asset that is valued and allocated between the parties to a dissolution. *Stern v. Stern*, 66 N.J. 340, 331 A.2d 257 (1975). Goodwill reflects not simply a possibility of future earnings, but a probability based on existing circumstances. *Dugan v. Dugan, supra.*

In a dissolution of marriage proceeding, the value of goodwill should be measured by arriving at a present value based upon past results and not by accounting for the postmarital efforts of the

professional spouse. However, the method of valuation that, as here, capitalizes the historical past earnings of the business at an appropriate capitalization rate to identify a value of the goodwill possessed by the business at the date of dissolution avoids the problem of valuing a business on the basis of post-dissolution earnings and profits. *See In re Marriage of Foster*, 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974).

Thus, a valuation on the basis of past earnings represents the advantage currently possessed by the business as shown by its historical ability to earn income in excess of that which would be earned if the owner had invested in tangible property and leased it to other businesses. Zipp, *Divorce Valuation of Business Interests: A Capitalization of Earnings Approach*, 23 Fam.L.Q. 89 at 109 & 111 (1989); *see generally* Udinsky, *Putting a Value on Goodwill*, 9 Fam.Adv. 37 (1986).

■ Goodwill is a property or asset which supplements the earning capacity of another asset, a business, or a profession, and, therefore, it is not the earning capacity itself. *In re Marriage of Hall*, 103 Wash.2d 236, 692 P.2d 175 (1984). Hence, while both a practicing professional and a salaried professional bring an earning capacity comprised of skill and education to their positions, the goodwill directly supplements the earning capacity only of the practicing professional. *In re Marriage of Keyser*, 820 P.2d 1194 (Colo.App.1991).

Thus, we conclude that the identification, valuation, and division of husband's goodwill as a portion of his physical therapy practice did not divide husband's future income. Therefore, wife did not receive a double recovery.

### III.

■ Finally, husband contends that the court failed to make any findings regarding the reasonable needs of the children and did not calculate the minimum presumptive amount of child support under the guidelines. We agree.

The trial court was required to calculate the minimum presumptive amount of sup-port, *see In re Marriage of Greenblatt*, 789 P.2d 489 (Colo.App.1990); *In re Marriage of Van Inwegen*, 757 P.2d 1118 (Colo.App. 1988), and, in addition, it should have translated the children's higher standard of living into specific monetary requirements. *See In re Marriage of Schwaab*, 794 P.2d 1112 (Colo.App.1990). Thus, the award of $4,000 child support cannot stand in the absence of meaningful findings that indicate the basis for the court's determination. *See In re Marriage of English*, 757 P.2d 1130 (Colo.App.1988); *In re Marriage of Van Inwegen, supra*.

### IV.

In her cross-appeal, wife first asserts that the trial court erred in failing to award her one-half of the net assets. To support this contention, she argues that the court failed to make findings regarding her assertion that husband had dissipated assets; failed to consider the tax liability on the unallocated maintenance and child support that she received during temporary orders; and failed to enter sufficient findings to justify an unequal division. We are not persuaded by these arguments.

■ The division of marital property is a matter resting within the sound discretion of the trial court, and its ruling thereon will not be disturbed on review when it is supported by competent evidence. *In re Marriage of Price*, 727 P.2d 1073 (Colo. 1986). Further, the statutory requirement to divide property equitably does not require an equal division. *In re Marriage of Warrington*, 44 Colo.App. 294, 616 P.2d 177 (1980).

■ Here, the trial court expressly noted in its findings that wife believed husband had dissipated assets during the pendency of temporary orders, but that husband claimed he had not done so. The record includes exhibits submitted by each party supporting their respective positions. Thus, although the order lacks further findings that explain the evaluation of this evidence, we may presume that the trial court considered the evidence presented by both parties when it implicitly decided that

no dissipation had occurred. *See In re Marriage of Udis,* 780 P.2d 499 (Colo.1989).

Furthermore, the trial court found that wife owed approximately $15,000 for attorney and expert fees, income taxes, and a landscaping bill. This finding is supported by the evidence and reasonable inferences which could be made. Therefore, an award of $10,000 to satisfy these obligations was within the court's discretion. *See In re Marriage of Kiefer,* 738 P.2d 54 (Colo.App. 1987).

Finally, the court specifically observed that it was not required to divide the property equally. In addition, it found that the vast majority of property was not liquid; that husband's practice consisted of over one-half of the estate, but necessarily had to remain with him; and that liquidation of most of the assets might entail substantial tax consequences. Hence, we find no error in the award of an equitable, rather than an equal, division of property.

### V.

Wife also contends that a greater award of child support should have been made and that the amount, and the extent of, maintenance was insufficient. However, as we indicated in part III of this opinion, the award of child support cannot stand and must be addressed on remand.

Furthermore, inasmuch as issues of maintenance and child support are interrelated, *see In re Marriage of Micaletti,* 796 P.2d 54 (Colo.App.1990), we conclude that it is also appropriate to remand the issue of maintenance here for further consideration and more specific findings to support the award. *See In re Marriage of Sinn,* 696 P.2d 333 (Colo.1985).

In addition, we direct the trial court to clarify and elaborate its findings upon the existing record regarding wife's reasonable needs and the factors, other than the size of the marital estate, upon which its order is based.

Accordingly, the portions of the judgment relating to maintenance and child support are reversed, and the cause is remanded to the trial court for further proceedings

not inconsistent with the views expressed herein. In all other respects, the judgment is affirmed.

METZGER, J., concurs.

CRISWELL, J., specially concurs.

Judge CRISWELL specially concurring.

I agree with the majority opinion. However, I write separately to emphasize my views as to the extent to which that asset referred to as "goodwill" should be considered by the trial court on remand in determining issues relating to maintenance and child support.

The nature of "goodwill" as an asset is one which has been the subject of some judicial controversy. Substantially all of the courts have recognized that a business possesses "goodwill" only to the extent that it is probable that the business, as a business, will *continue* to attract patronage. *See In re Marriage of Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974). Thus, goodwill, if it exists as an asset, is valuable only because it reflects a probability of the receipt of *future* income. *See Kimbrough v. Kimbrough,* 228 Neb. 358, 422 N.W.2d 556 (1988); *In re Marriage of Hall,* 103 Wash.2d 236, 692 P.2d 175 (1984); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (1981). *But see Marriage of Lukens,* 16 Wash.App. 481, 558 P.2d 279 (1976); *In re Marriage of Lopez,* 38 Cal.App.3d 93, 113 Cal.Rptr. 58 (1974).

It is generally agreed, therefore, that, to determine the present value of such an asset, one legitimate method of evaluation that may be used is to determine the historical income attributable to goodwill, to assess the probability of that income's continuance, discounted by the business risks involved, and to engage in a "capitalization" method of reducing the future estimated income to present worth. *See Marriage of Hall, supra; Dugan v. Dugan, supra.* Such a capitalization method of evaluation is similar to the capitalization method of reducing any future income stream to present worth. *See Brady v. Burlington,*

752 P.2d 592 (Colo.App.1988) (reduction of employee's future wages to present worth).

Here, both expert witnesses presented by the parties, as well as the court, adopted this capitalization method of evaluating the "goodwill" of husband's business. That evaluation, therefore, was based upon the premise that husband would continue to receive future income. And, to the extent that an interest in that asset was transferred to wife, she received (although in a different form) a portion of the future income that that asset was predicted to produce.

As a corollary, husband's right to receive such income was reduced. That is, while he will continue to receive the future proceeds produced by such asset, he is required to pay to wife a sum representing the present value of a portion of that future income.

Under these circumstances, it is my view that the trial court, after treating this interest in future income as an asset and dividing it, cannot for purposes of maintenance or child support, continue to treat all of it as husband's sole income.

While I have found no cases deciding this question with respect to the goodwill of a professional business, several courts have reached a similar conclusion with respect to other assets whose value is based upon their ability to produce future income. Generally, for example, it has been held that, to the extent that the right to receive pension payments in the future has been considered an asset for property division purposes, those payments may not also be considered as income for maintenance or support purposes. *See Stemper v. Stemper*, 403 N.W.2d 405 (S.D.1987); *Pelot v. Pelot*, 116 Wis.2d 339, 342 N.W.2d 64 (1983); *D'Oro v. D'Oro*, 187 N.J.Super. 377, 454 A.2d 915 (1982). *See also Innes v. Innes*, 117 N.J. 496, 569 A.2d 770 (1990) (decided after adoption of statute codifying *D'Oro* rule).

I do not agree that, at least for child support purposes, this right to receive future income should be considered solely as an asset and not as income. To do so would not accurately depict the funds collectively available to provide for the children's future support.

However, in considering such income for support purposes, that income cannot be looked upon as the sole income of the party who is to receive the future payments. Rather, to the extent that the asset producing that income has been divided by requiring that party to pay a part of the asset's present worth to the other party, a sum representing the interest transferred must be subtracted from the transferor's income and added to the transferee's income before applying the statutory guideline. Failure to make such an income allocation would, in my opinion, give to the transferee a double credit. *See Stemper v. Stemper, supra.*

Thus, it is my opinion that, on remand, the court, in determining the parties' income for purposes of child support, must subtract from husband's income and add to wife's income that part of the funds being received by husband that is attributable to that share of the goodwill asset which, under the property division order, husband was required to transfer (by payment of its present value) to wife.