In re the MARRIAGE OF Mary Ann BANNING, Appellee,

and

Charles L. Banning, Appellant.

No. 97CA0256.

Colorado Court of Appeals, Div. III.

July 23, 1998.

Rehearing Denied Aug. 20, 1998.

Certiorari Denied Jan. 25, 1999.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1997.

Osborn & Bloom, P.C., Charles S. Bloom, Fort Collins, for Appellee.

Dickson and Dickson, P.C., Charles B. Dickson, Greeley; John Stehlik, Greeley, for Appellant.

Opinion by Judge TURSI.*

In this dissolution of marriage action, Charles L. Banning (husband) appeals from the permanent orders concerning valuation of his business and the award of maintenance to Mary Ann Banning (wife). We affirm.

## I.

■ The division of marital property is a matter resting within the sound discretion of the trial court, and its ruling will not be disturbed on review when it is supported by competent evidence. *In re Marriage of Bookout*, 833 P.2d 800 (Colo.App.1991), *cert. denied as improvidently granted*, 846 P.2d 189 (Colo.1993).

### A.

Husband first asserts that the trial court erred in valuing the TAM Corporation, a business in which he was the majority owner. We are not persuaded.

■ The valuation of a business owned by a spouse is a question of fact to be resolved by the trial court as fact-finder. The excess earnings method is a generally accepted method for resolving that issue. *In re Marriage of Huff*, 834 P.2d 244 (Colo. 1992).

■ Here, the trial court found that the valuation performed by wife's expert, which determined a reasonable income that would be paid to the officers and directors of the corporation and treated the balance as excess or retained earnings, was more realistic than the valuation performed by husband's expert. This determination was within the trial court's discretion.

Wife's expert testified as to the basis for his capitalization rate. He also explained that the earnings amount he used was the sum that would reasonably be paid to all officers and directors, and not just to husband. Thus, there is no basis for husband's contention that the valuation of his business was based upon his monthly earnings.

Further, even without specific findings, we may presume that the trial court relied upon this testimony when, as it stated, it accepted the opinion of wife's expert. *See In re Marriage of Udis*, 780 P.2d 499 (Colo.1989).

■ Husband argues that, by capitalizing excess income in order to arrive at a value for the corporation, the court's order requires him to use future after-tax earnings to pay the equalization note awarded to wife. However, that argument has been considered by another division of this court, and rejected. *See In re Marriage of Bookout, supra.* To the contrary, the capitalization of excess earnings method of valuation avoids valuing a business on the basis of post-divorce earnings and profits. *See In re Marriage of Huff, supra.*

### B.

Husband also contends that the trial court erred. in increasing its initial valuation of the corporation by $37,996 to offset a confessed $40,000 mathematical error. We disagree.

In its post-trial order, the trial court found that, in its valuation of the husband's corporation, it had not included the tangible assets of the business. It found that those assets were valued at $37,996, and that finding is supported by husband's own expert.

■ Further, contrary to husband's characterization, the trial court did not dispose of the tangible assets of the corporation separately from the other assets. Rather, it adjusted the value of the corporation because it had failed to include the value of the tangible assets in its initial determination of value. Accordingly, we find no error.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1997.

### C.

Husband separately argues the trial court erred in finding any goodwill existed in his business. We are not persuaded.

Husband's concedes that, under Colorado precedent, even though it may not be subject to sale, goodwill can exist in a professional practice and, when it does exist, it can be valued and divided as a marital asset. *See In re Marriage of Huff, supra; In re Marriage of Bookout, supra.* However, husband seeks to distinguish *Huff* and *Bookout* on the basis that in neither case did the trial court find that the spouse could earn the same income without continued participation in the ongoing business, nor was the issue raised. In contrast, the trial court in this case agreed that husband could disband his business, start a new business serving his clients, and make the same income.

Husband argues that there can be no good will in TAM Corporation that would be vendable to a purchaser. In essence, he argues that when the earnings of a spouse are derived solely from the spouse's own skill and reputation, and those earnings would not be affected in any way by leaving the business in which the spouse is working, no goodwill exists in the ongoing business, or at least none that is of value to the spouse.

■ Husband's attempt to distinguish the holdings in *Huff* and *Bookout* is not persuasive. The mere fact that husband could leave the existing business, and start again with a different name, location, or even business structure without impact on his earnings does not mean that no goodwill exists of value to the spouse. Even in a new business, husband would retain his reputation, his customer base, and his customer relations, all of which were developed during the marriage. *See In re Marriage of Nichols,* 43 Colo.App. 383, 606 P.2d 1314 (1979). These together constitute goodwill that supplements, and is distinct from, husband's earning capacity. *See In re Marriage of Bookout, supra.*

We therefore conclude that, even though husband's earnings would not be affected by his leaving the existing business, goodwill existed at the time of dissolution that was developed during the marriage. It would be inequitable to wife, who also contributed to the marriage, to ignore the value of that goodwill as a marital asset. *See generally* Zipp, *Divorce Valuation of Business Interests: A Capitalization of Earnings Approach,* 23 Fam. L.Q. 89 (1989). Hence, the trial court did not err valuing and dividing that goodwill as a marital asset existing at the time the marriage was dissolved.

### II.

Husband asserts that the trial court failed to make sufficient findings to support the determinations that wife was entitled to maintenance and that an award of permanent maintenance was appropriate. We disagree.

■ The trial court has broad discretion in determining the amount and duration of maintenance. *In re Marriage of Fisher,* 931 P.2d 558 (Colo.App.1996).

■ Here, the court specifically found that the wife lacked sufficient property to meet her reasonable needs and is unable to support herself through appropriate employment. Thus, the trial court made the precise finding that is a necessary predicate to an award of maintenance.

Furthermore, the trial court found that the parties were married for 24 years, that wife spent the early years of the marriage raising the parties' two children, and that during the marriage wife had obtained a bachelor's degree in fine arts as well as a master's divinity degree. In its post-trial order, the court elaborated that it entered an order for decreasing amounts of support to give wife a period in which to provide a home for her daughter, who was to graduate in May 1997, to make a decision regarding employment, and to obtain additional training. It also found that the testimony was speculative regarding wife's ability to utilize her degrees to earn income.

The record supports these findings. In addition, the record shows that wife's monthly needs amounted to approximately $7000 and husband testified that $4000 would be a reasonable amount of maintenance per month.

■ Also, because a spouse is not required to consume his or her property before being entitled to maintenance, *see In re Marriage of Sewell,* 817 P.2d 594 (Colo.App.1991), the trial court's finding that wife had insufficient property to meet her reasonable needs is sufficient to show that it considered the payments that wife would receive from the equalization note. Finally, while we recognize that the trial court's written order discusses the award of maintenance before the disposition of property, we are not persuaded that the order of the issues establishes that the trial court actually determined maintenance prior to determining the appropriate property division. Further, the order for decreasing maintenance over the first eighteen months of payment as well as the court's post-trial order shows that it considered, in part, the fact that wife was custodian of a minor child. Therefore, we find no error in the amount or duration of maintenance.

### B.

Husband also contends that the maintenance order, when implemented *along with* the property division, is unconscionable, inequitable, and oppressive to him. We disagree.

■ Here, it is undisputed, and husband so testified, that he had been earning between $200,000 and $300,000 per year for the three-year period prior to the entry of the decree. Accordingly, the evidence does not support the contention that payment to wife of her share of the business over a four-year period would impoverish husband.

Furthermore, husband's assertion that he necessarily must use after-tax dollars on a monthly basis to satisfy the promissory note payable to wife is not supported by record. Nevertheless, the trial court stated that it had considered the income tax ramifications of the transfers and payments ordered, and found that they were equitable under the totality of the evidence.

Judgment affirmed.

Judge PLANK concurs.

Judge BRIGGS, specially concurs.

Judge BRIGGS, specially concurring.

I concur in the conclusions reached by the majority. I write separately to explain what I perceive as the fallacy in husband's argument that future income valued as goodwill should be subtracted from that income when calculating child support and maintenance. I also write to explain why, despite the presence in this case of a problem that commonly results in goodwill being overvalued for purposes of marriage dissolution, I nevertheless concur in affirming the trial court's valuation.

### I.

Husband argues that, contrary to the reasoning in *In re Marriage of Huff,* 834 P.2d 244 (Colo.1992), use of the excess earnings method of valuing goodwill does not avoid the problem of "double dipping." No matter what *method* of valuation is used, it does not change the *nature* of the asset being valued. Goodwill still represents potential future income. Hence, according to husband's argument, if a portion of income is valued and divided as a currently existing asset, that portion must be subtracted from potential future income when calculating maintenance and child support. Otherwise, the other spouse receives a "double credit" based on the same income.

The argument at first blush is not without some appeal. The supreme court in *Huff* relied on the reasoning in Zipp, *Divorce Valuation of Business Interests: A Capitalization of Earnings Approach,* 23 Fam. L.Q. 89 (1989). As recognized in that article, regardless of the method of valuation, what is being valued is "the value of the business in terms of its potential to produce future earnings." Zipp, *supra,* at 92.

However, aside from the fact the supreme court's express approval in *Huff* of the excess earnings method of valuation is binding on this court, the reasoning in husband's argument relies on no less a fallacy than that claimed for the reasoning in *Huff.* Husband's argument assumes the participating spouse is *purchasing* goodwill at the time of the dissolution, with the purchase price paid out of future income. If that were the case, then it might follow that the participating spouse

should not have to pay for the purchase out of future income and, at the same time, treat the same income as available for purposes of calculating child support and maintenance. That, however, is not the case.

The excess earnings method of valuation, like other similar ones, relies on a *fictional* purchase and sale of goodwill. In fact, at the time of dissolution the goodwill to be valued and divided has already been accumulated. It is an existing intangible asset, no different from any other marital asset that is *fully owned.*

To illustrate, assume husband and wife during their marriage had acquired a house and other tangible assets, including furniture and equipment used in the business, valued at $600,000, plus goodwill in husband's business valued at $200,000. A trial court seeking to divide the marital assets equally could, for example, distribute $400,000 of the $600,000 in tangible assets to wife. The balance of the tangible assets, including the business furniture and equipment, could be distributed to husband, together with the goodwill. Each would have received marital assets of equal value.

In such a case, while the value of goodwill as an intangible business asset may lie in its ability to produce future income, the same can be said of the tangible assets used in the business. When calculating child support and maintenance, there would be no more reason to subtract that part of earnings attributable to the goodwill than there would be to subtract that part of income attributable to any other business asset.

The rationale does not change when, as here, the value of goodwill and other assets assigned to husband in dividing marital property exceeds the value of assets assigned to wife. In these circumstances, husband may well be required to make payments out of his future income to wife, but he is not "purchasing" the good will in the sense of purchasing an *additional* marital asset. Rather, husband must make the future payments in order to achieve the desired equal division of marital assets already fully owned.

Husband's financial ability to make payments necessary to balance the division of marital property while at the same time paying child support and maintenance should of course not be ignored. However, no reason exists to subtract those payments when calculating the child support and maintenance to be paid.

## II.

Husband also argues that, even if the goodwill in his business is subject to valuation and division as a marital asset, the trial court erred in accepting the value calculated by wife's expert. For this argument, husband does not challenge the use of the excess earnings method of valuation. Rather, husband challenges the use by wife's expert of the earnings of a fictitious average worker to determine the amount of husband's supposed excess earnings. According to husband, because this approach ignored husband's actual experience and abilities, the expert necessarily undervalued his earning capacity and overvalued goodwill.

In my view, overvaluation is a common problem when the excess earnings method is used to value goodwill for purposes of marriage dissolution. The problem arises when a critical point is overlooked: "Good will for marital property purposes is substantively different from good will for business sale purposes." Zipp, *supra,* at 106.

Among the differences is that the value of goodwill inherent in the spouse participating in the business depends completely on what happens to that spouse in the future. This presents a greater risk than is typically present for the purchaser of goodwill in an ongoing business. In addition, goodwill as an asset that is inherent in the participating spouse will immediately begin diminishing in value upon the marriage dissolution. All future income created by post-dissolution efforts must be eliminated from the valuation. *See generally* Zipp, *supra; see also* Udinsky, *Putting a Value on Goodwill,* Fam. Adv. 37 (Fall 1986).

As a result of these and other differences, the formulas commonly used for providing a capitalization rate to determine the value of goodwill in a business being sold as a going concern, such as that provided by the Internal Revenue Service, often need modification. Those modifications will result in a higher

capitalization rate, and thus a lower valuation. *See generally* Zipp, *supra;* Udinsky, *supra.*

Here, wife's expert used the IRS model for valuing the goodwill in an ongoing business to value the goodwill in husband's business. The expert did not consider any modifications to reflect the unique nature of the goodwill inherently attached to husband. Hence, the expert may well have overvalued husband's goodwill.

However, husband's sole argument on appeal is that wife's expert improperly used the fictitious wage of an average worker in husband's field of business to calculate excess earnings. The problem with the argument is that use of a fictitious average salary is not necessarily erroneous. It is only when no adjustment is later made in the capitalization rate to reflect the actual skills of the participating spouse that problems may arise. *See generally* Zipp, *supra.* Hence, in light of the limited issue before us, I concur with the majority in rejecting husband's challenge to the valuation of the goodwill in his business.