24CA1274 Marriage of Adamopoulos 06-18-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1274
Elbert County District Court No. 22DR30072
Honorable Gary M. Kramer, Judge

---

In re the Marriage of

Wen Hui Huang,

Appellee,

and

Emmanuel Adamopoulos,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BROWN
Harris and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

---

Harrington Brewster Mahoney Smits, P.C., Joshua C. Sauer, Alexis S. Chavez, Denver, Colorado, for Appellee

Hampton & Pigott LLP, David J. Pigott, Broomfield, Colorado, for Appellant

¶ 1    In this dissolution of marriage case involving Emmanuel Adamopoulos (husband) and Wen Hui Huang (wife), husband appeals the portions of the district court's permanent orders concerning the division of marital property.  We affirm.

## I.    Background

¶ 2    Husband and wife were married in 2011 and have one child. Wife filed for dissolution of marriage in 2022.  In May 2024, the district court held a permanent orders hearing to resolve the parties' financial matters, as the parties had already reached an agreement concerning parenting time and decision-making.

¶ 3    Husband's appeal centers on the district court's valuation and allocation of HappyShakeBricks, LLC (the Company), an e-commerce store wife founded in 2020 that buys and sells new and refurbished Lego pieces.

¶ 4    During the marriage, the parties purchased and maintained three properties, including a home on Singing Hills Road in Parker, Colorado (Singing Hills property).  In 2021, the parties took out a home equity line of credit (HELOC) against the Singing Hills property totaling $300,000.  The parties invested $91,795.04 from the HELOC into the Company.

¶ 5    In husband's initial sworn financial statement, he valued the Company at $3,000,000.  At the permanent orders hearing, he testified that the value of the Company was $6,000,000, although he "truly believe[d] the value to be close to $9,000,000."  According to husband's "simple math," if wife were to sell the Company's entire inventory of Lego pieces at the average per unit price, the value of the Company would be about $5,000,000 "on the low end."  Conversely, wife estimated the value of the Company by subtracting its total liabilities from its total assets, arriving at $14,051.49.

¶ 6    After the hearing, the court entered written permanent orders dividing the marital estate equitably (and roughly equally) between wife and husband.  The court allocated the Company to wife and largely adopted her valuation methodology, finding that the Company was worth $21,910.58.  The following day, the court entered a decree of dissolution of marriage.  This appeal followed.

## II.    Analysis

¶ 7    Husband contends that the district court erred by (1) double counting the HELOC debt in a manner that benefited wife's share of the marital estate; (2) not accounting for the Company's goodwill

when determining its value; and (3) failing to consider husband's admitted evidence. We reject these contentions.

A. Applicable Law and Standard of Review

¶ 8 The Uniform Dissolution of Marriage Act governs a district court's division of marital property. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); § 14-10-113, C.R.S. 2025. The court must first determine whether an asset or debt is marital and subject to division or separate and shielded from division. *In re Marriage of Jorgenson*, 143 P.3d 1169, 1171-72 (Colo. App. 2006) (The "[a]llocation of marital debts is in the nature of property division."). Once an asset or debt has been deemed to be marital, the court must value it. *Id.* at 1172; *Balanson*, 25 P.3d at 36. "[T]he court may select the valuation of one party over that of the other party or make its own valuation, and its decision will be affirmed if the value is reasonable in light of the evidence as a whole." *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 41.

¶ 9 Ultimately, the court must divide the marital property in such proportions as it deems just after considering all relevant factors. § 14-10-113(1). The overall property division must be equitable, but it need not be equal. *In re Marriage of Wright*, 2020 COA 11,

3

¶ 3. "[T]he key to an equitable distribution is fairness, not mathematical precision." *In re Marriage of Cardona*, 2014 CO 3, ¶ 34 (citation omitted). To that end, a district court has "great latitude to effect an equitable distribution based upon the facts and circumstances of each case." *Id.* (citation omitted).

¶ 10    We review a court's order dividing a marital estate for an abuse of discretion. *Medeiros*, ¶ 28. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Id.*

B.    The District Court Did Not Double Count the HELOC

¶ 11    Husband contends that the district court abused its discretion by double counting the HELOC — once as a marital debt and again as a liability reducing the value of the Company. He argues that the court's errant double counting unfairly benefited wife in the distribution of the marital estate. But husband's argument rests on a faulty premise. The court did not count any part of the HELOC as a business liability when valuing the Company. Accordingly, we reject husband's contention.

¶ 12    The parties stipulated that the net marital value of the Singing Hills property was $438,437.16, which they computed by

4

subtracting the outstanding balance of the HELOC, $298,562.84, from the fair market value of the home, $737,000.  The court accepted the parties' stipulated value, directed the parties to sell the Singing Hills property, and ordered that the proceeds from the sale be divided equally between the parties.  The marital balance sheet attached to the permanent orders reflects this allocation.  Thus, husband is correct that the court allocated the HELOC as a marital debt by subtracting it from the fair market value of the marital home.  But the court did not *also* reduce the value of the Company by the portion of the HELOC attributable to it.

¶ 13    In valuing the Company, the court referenced a balance sheet that wife prepared and submitted into evidence.  First, the court determined the value of the Company's total assets, including its checking and savings accounts, existing inventory, depreciation, and other identified assets.  Together, the Company's total assets were $254,082.25.  But the court noted that, "although [w]ife can take depreciation for federal tax purposes, it should not be deducted from the value of the business."  As a result, the court added depreciation ($7,859.09) back into the Company's assets, which then totaled $261,941.34.

5

¶ 14 Second, the court determined the value of the Company's total current liabilities, including a PayPal credit card balance, the outstanding cost of labor, an outstanding loan from wife's brother, and sales tax collected by the Company. Together, the Company's total current liabilities were $240,030.76.

¶ 15 Finally, the court subtracted the Company's total current liabilities ($240,030.76) from its total assets ($261,941.34) to determine the net value of the Company: $21,910.58.

¶ 16 Notably, a liability titled "Loan from HELOC" in the amount of $91,795.04 — the amount the parties stipulated they took from the HELOC and invested in the Company — was listed in the balance sheet as a *long-term* liability. It was not included in the *total current liabilities* figure the court used to compute the Company's net value.

¶ 17 Because the record makes clear that the district court did not double count the HELOC as husband argues, we discern no abuse of discretion. *See Medeiros*, ¶ 28.

C. The District Court Did Not Abuse Its Discretion by Failing to Assign a Value to the Company's Goodwill

¶ 18 Husband contends that the district court erred by failing to value the Company's goodwill. We disagree.

¶ 19    The goodwill of a company is an intangible asset reflecting the value of a business over and above its tangible assets.  *See In re Marriage of Goff*, 902 P.2d 402, 404-05 (Colo. App. 1994).  True, "[t]he value of goodwill has long been accepted as an attribute of a business relevant to determining its value."  *Medeiros*, ¶ 41.  But based on our review of the record, neither party provided the court with any evidence of the value of the goodwill attributable to the Company.  *See In re Marriage of Rodrick*, 176 P.3d 806, 815 (Colo. App. 2007) (the parties are responsible for presenting the court with the data needed to value marital property).

¶ 20    Husband's sole mention of goodwill is in a single sentence in the parties' joint trial management certificate: "[Wife] has a very significant amount of reviews, which contribute toward marketability and goodwill value."  Husband did not offer any evidence of the Company's goodwill at the permanent orders hearing.  In fact, the word "goodwill" appears in the hearing transcript only once in a context entirely unrelated to the goodwill value of the Company.[1]

---

[1] Wife testified that she usually buys used Lego pieces from "[Facebook] marketplace or Goodwill online."

¶ 21    To the extent husband argues that his multi-million dollar valuation of the Company included some component of goodwill that the court should have recognized and accepted, we disagree for two reasons.  First, husband's valuation depended on what he estimated to be the number of Lego pieces in inventory multiplied by the average sales price of a Lego piece as listed on the Company's website.  Husband never indicated that his total value or the per piece price included the value of goodwill.

¶ 22    Second, even if husband's valuation included goodwill, the court was not required to accept it.  *See Medeiros*, ¶ 41 ("[T]he court may select the valuation of one party over that of the other party.").  The court did not find husband's testimony about the value of the Company to be "remotely persuasive."  *See In re Marriage of Farr*, 228 P.3d 267, 270 (Colo. App. 2010) (it is the trial court's role to determine the credibility of witnesses and to resolve conflicting evidence).

¶ 23    Absent evidence or argument in the record pertaining to the goodwill value of the Company, we cannot conclude that the court erred by failing to consider goodwill in its valuation.  And because

the record otherwise supports the court's valuation of the Company, we will not disturb it. *See Medeiros*, ¶ 41.

¶ 24 Yet on appeal, husband argues that the "court's own ruling establish[ed] that [the Company] possess[ed] substantial goodwill that should have been valued as a matter of law." Husband notes that wife was qualified to work as a certified public accountant (CPA) and that the court found her decision to start the Company instead of practice as a CPA to be a good faith career choice. He reasons that, "[b]y holding that [w]ife was *not* voluntarily underemployed even though she was earning $36,000-$61,000 less than she could [by working as a CPA], the court in that moment found by implication that the goodwill of the business was *at least* $36,000-$61,000."

¶ 25 Husband never made this argument to the district court. *See Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 340 n.10 (Colo. 2004) ("Arguments not raised before the trial court may not be raised for the first time on appeal."). But it appears that the argument is based on a perceived inconsistency between the court's finding that wife made a good faith career choice to operate the Company instead of practice as a CPA and its finding that the Company has

9

no goodwill value. And a party need not object to the court's findings to preserve an appellate challenge to those findings. C.R.C.P. 52; *see People in Interest of D.B.*, 2017 COA 139, ¶ 30. We give husband the benefit of the doubt as to preservation because, even assuming preservation was not required, the argument fails.

¶ 26    Essentially, husband argues that the goodwill value of the Company is at least as much as wife was willing to forgo in salary by choosing to run the Company instead of practice as a CPA. Any other conclusion, husband reasons, should have resulted in the court finding that wife's career change was not in good faith. *See* § 14-10-115(5)(b)(I), (III)(B), C.R.S. 2025 (if a parent is voluntarily underemployed, child support must be calculated based on a determination of potential income, but a parent may not be deemed underemployed if the employment is a good faith career choice that is not intended to deprive a child of support and does not unreasonably reduce the support available to a child).

¶ 27    In support of his contention, husband provides only a single (partial) citation to *In re Marriage of Bookout*, 833 P.2d 800, 803 (Colo. App. 1991), in which the division explained that a court can "determine the value of goodwill of a professional practice . . . by

10

fixing the amount by which the salary level of the owner exceeds that which would have been earned as an employee by a person with similar qualifications of education, experience, and capability." But husband's reliance on *Bookout* is misplaced. There, the division reviewed a district court's comparison of a self-employed therapist's annual income with the average income of a similarly situated, salaried therapist. *Id.* In that context, the division explained that "[i]f the owner's actual average income exceeds the total of the employee norm and a return on the investment in the physical assets of the business, the excess would be the basis for evaluating goodwill and is subject to a capitalization factor." *Id.*

¶ 28 Here, husband requests that we compare wife's annual income from the Company to the annual salary that she could earn as a CPA, and to equate the difference in wife's earning capacity between two distinct positions in two distinct industries with the goodwill possessed by the Company. *Bookout* does not address such a situation. Nor do we see any legal or logical connection between a finding that wife made a good faith career choice — which the court based at least in part on the fact that "the parties established [the

Company] together" during the marriage — and the absence of a finding that the Company has measurable goodwill.

¶ 29    In the end, we are not persuaded that the district court abused its discretion by not valuing the Company's goodwill.[2] *See Medeiros*, ¶ 28.

### D. The District Court Did Not Fail to Consider Husband's Admitted Evidence

¶ 30    Husband contends that the district court erred and compromised "the integrity of the marital property division . . . when [it] . . . failed to consider key evidence admitted by [h]usband concerning the scope, assets, and funding of" the Company. Husband admits this issue is not preserved but asserts that we should nonetheless review for plain error to avoid a fundamental miscarriage of justice. *See People in Interest of O.J.R.*, 2025 COA 78, ¶ 37 ("[T]he miscarriage of justice exception is a high bar and narrow in scope, applying only to limited situations in which an

---

[2] To the extent husband makes additional arguments in his opening brief related to evidence he allegedly offered in support of a finding of goodwill, husband failed to make those arguments in the district court, so they are unpreserved. *See Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 340 n.10 (Colo. 2004) ("Arguments not raised before the trial court may not be raised for the first time on appeal.").

error by the [trial] court — not otherwise properly preserved for appeal — results in a grossly unfair outcome . . . .").  Husband argues that he discovered the issue only after the court compiled the appellate record and "it became clear that none of his admitted exhibits were included."

¶ 31    Husband successfully supplemented the appellate record with the missing exhibits — which means the exhibits were, in fact, part of the district court record, *see* C.A.R. 10(a)(1) (the record on appeal consists of all documents filed in the trial court case and designated transcripts), (f)(2) (allowing a party to supplement the record on appeal "[i]f any material part of the trial court record is omitted or missing").  But he appears to contend that because the appellate record did not contain the exhibits initially, the district court must have "failed to consider [h]usband's admitted evidence when dividing the marital estate."

¶ 32    This case certainly does not present a "'rare instance[],' involving 'unusual' or 'special' circumstances" in which we would exercise our discretion to review an unpreserved issue in a civil case for plain error.  *Robinson v. City & County of Denver*, 30 P.3d 677,

685 (Colo. App. 2000) (citations omitted).  But more importantly, the record belies husband's contention.

¶ 33    Husband argues that "several categories of relevant, admitted evidence were either omitted from the court's record or disregarded entirely," but he cites only one exhibit that he claims was ignored by the court: Exhibit GG, a series of photographs depicting areas of the marital home set aside to organize and store Lego pieces for the Company.  At the permanent orders hearing, husband presented Exhibit GG to the court and testified concerning the photos, and the court admitted the exhibit into evidence.  Nevertheless, husband argues that the "court's written order contains no indication that it reviewed or weighed [h]usband's admitted exhibit."

¶ 34    But the court's order notes that "both parties testified and submitted demonstrative exhibits regarding their preferred allocation of the marital estate" and that "[t]he [c]ourt considered each party's testimony and each party's exhibits."  The mere fact that the court did not cite Exhibit GG in its permanent orders does not mean it failed to consider husband's evidence.  Indeed, because the court admitted Exhibit GG into evidence at the permanent orders hearing, we presume it considered the exhibit before issuing

its final order. *See In re Marriage of Collins*, 2023 COA 116M, ¶ 21 ("[W]e presume that the court considered all the evidence presented.").

¶ 35   The record also reflects that the court credited husband's evidence over wife's evidence on certain issues. For example, husband inherited a family business that he owns and manages with his brother. The business owns a plot of land that husband and his brother lease out for the purpose of operating a gas station. At the permanent orders hearing, wife argued that the land owned by the business was worth $800,000. But husband countered that the business was worth nothing due to environmental and maintenance concerns related to the property. The court credited husband's testimony and determined that the value of husband's business was $0.

¶ 36   In the end, "it is the province of the trial court to determine the credibility of the witnesses and to resolve conflicting evidence." *Farr*, 228 P.3d at 270. Just because the court found wife's evidence and testimony concerning the value of the Company to be more persuasive than husband's does not mean that the court failed to

consider husband's evidence. Nothing in the record supports husband's contention.

## III. Appellate Attorney Fees

¶ 37    Although wife included a request for attorney fees in her answer brief, she did not make the request under a separate heading or provide any legal basis for the award. *See* C.A.R. 39.1 ("If attorney fees are recoverable for the appeal, the principal brief of the party claiming attorney fees must include a specific request, under a separate heading, and must explain the legal and factual basis for an award of attorney fees."). Thus, we decline to grant wife's request for attorney fees.

## IV. Disposition

¶ 38    We affirm the district court's judgment.

JUDGE HARRIS and JUDGE TOW concur.