Joe Edward Schaefer, appellant and cross-appellee, v.
Carla Jean Schaefer, appellee and cross-appellant.
642 N.W.2d 792

Filed April 25, 2002.   No. S-01-665.

Tylor J. Petitt, of The Van Steenberg Firm, P.C., for appellant.

Jeffrey L. Hansen, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Stephan, J.
This is an appeal from an order of the district court for Kimball County dissolving the marriage of Joe Edward Schaefer (Joe) and Carla Jean Schaefer (Carla). Joe contends the district court erred in determining custody of the parties' minor child, in awarding alimony, and in its distribution of the marital assets. Carla cross-appeals on the issues of alimony, child support, and property distribution.

## FACTS
Joe and Carla were married November 30, 1974. Three children were born during the marriage, and one child remained a

minor at the time of the dissolution proceedings. Joe was 49 and Carla was 50 at the time of the dissolution hearing.

Carla received a degree from Iowa State University in art education in 1972, prior to the marriage. Joe completed his bachelor's degree in education at Chadron State College during the early years of the marriage. Carla taught at a school in Harrison, Nebraska, from 1973 to 1977, when she returned to school at Chadron State College and obtained an endorsement in home economics. The couple returned to Harrison in approximately 1978, and Joe worked for his cousin at a mechanic shop. Their first child was born in 1978, and Carla stayed home with the children from 1978 to 1985. Carla declined a teaching job in 1979 because Joe felt it was important for her to stay home with the children. In 1985, Carla resumed teaching part time, and in 1987, she opened a home daycare business which she operated until 1996. During this time period, she also worked odd jobs, including cleaning the local bank in the evenings, baking rolls to sell at the local bakery, and caring for two local elderly women on weekends.

In 1984, Joe started a mechanic shop in Harrison which he operated until 1996. Carla testified that in approximately 1993, Joe began sleeping in a room above his shop in Harrison. He continued to come to the marital home for lunch and for dinner, and after spending time with the children, he would return to his shop to sleep. The parties have not lived together for any extended period of time since 1993.

Joe injured his hand in a work-related accident in the early 1990's, and in 1995, with the assistance of vocational rehabilitation, he returned to school at Chadron State College to earn a degree in justice studies. He sold his business during this time period. Joe testified that while he was attending Chadron State College, he also worked full time and used the money to pay for family bills. On cross-examination, however, he admitted that he did not help pay household utility bills after 1996. Carla testified that while Joe was in school, he never sent money to help with household expenses, and that it was difficult for her to provide for the family on her income.

Joe received his second degree from Chadron State College in May 1997. In August 1997, Joe entered law school in Lincoln, Nebraska, and graduated in May 2000. While attending law

school, Joe lived in Lincoln and saw his family sporadically. He borrowed money to pay for his education and testified that while in law school, he bought some items, including clothes, for the children. He admitted that no money was sent to help Carla with expenses during this time period. Joe incurred significant credit card debt while in law school. Carla did not assist Joe in paying for law school.

During law school, Joe began working part time as a legislative aid for a state senator. After graduation, he accepted a full-time position in the same capacity. He testified that the position utilized his legal skills, although he did not need to be an attorney to perform the job. Joe testified that his net income at the time of trial was $1,670 per month. He further testified that he enjoyed his job and intended to continue doing it, with the possibility of using it as a springboard into a political career.

In 1996, Carla accepted a teaching position in Kimball, Nebraska, and moved there with the children. Joe was attending Chadron State College at the time. In 1999, Carla accepted a teaching position in Coon Rapids, Iowa, where she resided at the time of the dissolution. She built a home in Iowa at the time of her move and financed it through her earnings, inheritance, and a government assistance program. Carla's net income at the time of trial was $1,800 per month.

Joe testified that during the course of the marriage, the parties borrowed approximately $51,000 from his parents. He testified that his mother kept a ledger balance documenting the amount of the loan and that he was expected to repay the entire balance. He admitted that there were no promissory notes or other documents obligating the repayment of the debt and that the last payment was made 8 years prior to trial. Carla testified that she never signed a document evidencing the loan.

The parties' three children resided with Carla at all relevant times. The oldest child recently completed college, the middle child is now attending college, and the minor child continues to reside with Carla in Iowa. At the time of the dissolution hearing in December 2000, the minor child was a 16-year-old high school junior. Both parties testified that Carla was the primary caregiver for the children throughout the marriage. The deposition of the minor child was admitted into evidence

at the dissolution hearing. The minor child generally testified that she preferred to live with Joe.

The parties bought a home while they lived in Harrison and continued to own it at the time of the dissolution. Carla testified that she used a portion of the inheritance she received during the marriage from the estate of her sister to pay off the mortgage balance on the Harrison home. Joe testified that the Harrison home had a value between $25,000 and $45,000 at the time of trial, and Carla testified the value was $35,000 to $45,000. Both parties offered exhibits valuing the household goods in their possession at the time of the dissolution. Both parties also offered deposition testimony from accountants relating to the value of Joe's law degree.

In an April 17, 2001, order, the district court dissolved the marriage. The court awarded custody of the minor child to Carla, reasoning that it was in the minor child's best interests to remain with Carla even though she expressed a preference to live with Joe. The court ordered Joe to pay child support in the amount of $423 per month, based upon his actual income, and alimony in the amount of $100 per month for 60 months. The court generally divided the household goods according to the goods in the possession of the parties at the time of dissolution. The court awarded Carla both the Harrison and the Iowa homes and refused to place a value upon Joe's law degree. Joe appealed, and Carla cross-appealed. Additional facts will be set forth when necessary in the analysis of the arguments made by the parties.

## ASSIGNMENTS OF ERROR

Joe assigns that the district court erred in (1) granting custody of the minor child to Carla, (2) ordering Joe to pay alimony, (3) ruling that a loan from Joe's parents was not marital debt, (4) ruling that Carla's inheritance was used to pay off the Harrison home, (5) granting a certificate of deposit to Carla on the basis that its source was her inheritance, (6) ruling that a 1993 Buick LaSabre awarded to Carla was nonmarital property, (7) placing too low a value on the Harrison home, (8) improperly valuing the personal property of the parties, (9) inequitably dividing the marital assets and debts, and (10) ordering Joe to pay $2,000 of Carla's attorney fees.

On cross-appeal, Carla assigns that the district court erred in (1) failing to award an appropriate amount of alimony, (2) failing to award alimony for an appropriate term, (3) failing to use Joe's earning capacity in calculating child support, (4) not placing a value on Joe's law degree, and (5) not awarding Carla a sufficient amount of attorney fees.

## STANDARD OF REVIEW

■ In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Gibilisco v. Gibilisco, ante* p. 27, 637 N.W.2d 898 (2002).

## ANALYSIS

### CUSTODY

The district court granted custody of the 16-year-old minor child to Carla, reasoning that although both parents were fit, it was clear from the record that Carla had met the daily responsibilities of raising the child and that the stronger parent-child relationship existed between Carla and the minor child. While acknowledging that the minor child expressed a desire to live with Joe, the court concluded that changing schools and hometowns during the final year of high school was not in the minor child's best interests.

Joe argues that the court erred in awarding Carla custody because he has a "wonderful relationship" with the minor child and because she wanted to live with him. Brief for appellant at 18. Although Neb. Rev. Stat. § 42-364(2)(b) (Reissue 1998) instructs the trial court to consider the child's preferences on the issue of custody, the statute also requires the court to consider all aspects of the best interests of the child. The record clearly establishes that Carla has been the primary caregiver throughout the minor child's life. The minor child wished to live with Joe primarily because she disagreed with Carla's disciplinary style. The district court did not abuse its discretion in awarding custody to Carla.

### ALIMONY

The district court found that this was a long-term marriage with significant imbalances in the contributions and sacrifices

made to the marriage. Joe argues that the alimony award of $100 per month for 60 months is improper because Carla is capable of supporting herself and because the award of alimony causes his monthly expenses to exceed his monthly income. Carla cross-appeals, contending the court erred in not considering Joe's earning capacity in determining alimony.

In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party, the polestar being fairness and reasonableness as determined by the facts of each case. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). See, also, Neb. Rev. Stat. § 42-365 (Reissue 1998). A court is to consider the income and earning capacity of each party, as well as the general equities of each situation. *Ainslie v. Ainslie*, 249 Neb. 656, 545 N.W.2d 90 (1996).

In his brief, Joe cites *Kimbrough v. Kimbrough*, 228 Neb. 358, 422 N.W.2d 556 (1988), for the proposition that "it is error to order alimony in excess of the spouse's earnings." (Emphasis omitted.) Brief for appellant at 21. In *Kimbrough*, we cited *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984), for the principle that it is an abuse of discretion to award alimony in excess of the earning capacity of the paying party. The facts presented in *Kimbrough* revealed that after payment of the child support ordered by the court, the husband would have $1,162 available for his living expenses. After paying her portion of childcare expenses, the wife would have $260 remaining from her net income. Under these circumstances, we determined that the trial court's alimony award of $1,000 per month continuing until the death or remarriage of the wife was excessive and should be reduced to $400 per month for a period of 7 years, or until the death of one of the parties or the wife's remarriage, whichever occurred first.

According to the worksheets submitted under the child support guidelines, Joe has net income of $1,804.42 per month based upon gross income of $27,660 per year, and net income of

$1,945.49 per month based upon earning capacity of $30,000 per year. Joe was ordered to pay child support of $423 per month based on his actual gross income. Joe's child support obligation will terminate no later than July 14, 2003, when the minor child reaches the age of 19. In addition to his income from employment, Joe expects to receive a substantial inheritance from the estate of his brother, who died in January 2000. Carla's monthly net income, after subtraction of her pro rata share of support for their minor child, is $1,439.46. There is ample evidence in the record to support the finding by the district court that Carla made significant contributions to the 26-year marriage. Under these circumstances, we find no abuse of discretion in the alimony award of $100 per month for 60 months, capitalized on the basis of Joe's actual current income.

### CHILD SUPPORT

Carla contends that the district court erred in using Joe's actual total monthly income of $2,305 in calculating child support. She argues that the district court should have considered Joe's earning capacity, which she calculated to be $2,500 per month. Using Joe's earning capacity would result in an increase in the child support obligation of $23 per month. Due to the insignificant variation between Joe's actual income and Carla's calculation of his earning capacity, the district court did not abuse its discretion in basing its child support calculations on Joe's actual income.

### LOAN FROM JOE'S PARENTS

The district court held that the debt to Joe's parents was Joe's personal debt to either pay or have forgiven by his parents. Joe contends that the finding that the debt was personal is erroneous because both parties testified that the money was used to finance marital projects.

The only evidence in the record regarding the legal existence of this debt is Joe's assertion that he intended to fully repay his parents. No payment has been made on any amounts owed for at least 8 years, and neither Joe nor Carla ever signed any document evidencing the debt. Thus, even if any money borrowed was used for marital purposes, there is no evidence in this record to support the existence of an enforceable marital debt.

The district court did not err in excluding the purported debt from the marital estate.

### BUICK LESABRE

The court awarded Carla a 1993 Buick LeSabre that was in her possession at the time of the dissolution, determining that it was nonmarital property. Carla testified that the car was purchased in 1996 as a gift to her from her father, even though it was titled in the names of both Carla and Joe. She stated that a previous car, also purchased by her father and titled in the name of the couple, was used as a trade-in on the Buick and that her father paid the difference. Carla testified that Joe had removed a diesel engine from the previous car and replaced it. Joe argues that this evidence establishes that the car was marital property.

On the evidence presented in this record, the district court did not abuse its discretion in concluding that the car was a gift to Carla from her father. At the time the car was purchased in 1996, Joe was in Chadron and Carla was teaching in Kimball, and the car was for her personal use. Joe has presented no evidence to the contrary and no evidence of the value of any improvements he made to the previous car. We find no abuse of discretion.

### HARRISON HOME VALUE

The district court found that the Harrison home had a value of $30,000. Joe contends that there is no evidence in the record to support this valuation. Joe, however, testified that the value of the home was between $25,000 and $45,000, and Carla testified that the value was $35,000 to $45,000. The district court valued the home within this range and did not abuse its discretion in doing so.

### PROPERTY AND DEBT DISTRIBUTION

Joe argues that the trial court improperly relied upon the "excessive" values Carla assigned to Joe's household property in dividing the household assets of the parties. Brief for appellant at 26. He contends that a 1995 computer was overvalued at $500, a used sofa was valued at $500, and end tables were valued at $200. We find that the parties generally agreed as to the division of household goods and that the district court did not abuse its discretion in relying upon the values placed upon the property.

In addition, Joe argues that Carla should not have been granted both her home in Iowa and the home in Harrison. Carla financed her Iowa home without any assistance from Joe, and the court clearly did not err in awarding her that asset. In addition, the district court found that awarding Carla the Harrison home was justified due to the significant imbalance in the contributions of the parties to the marriage from and after 1991. We find no abuse of discretion in this determination.

## CARLA'S INHERITANCE

During the marriage, Carla inherited money from the estate of her sister. In her deposition, she testified that the value of the inheritance was approximately $13,000, and at trial, she testified that after reviewing records, she determined the value to be $16,800. Carla testified that she deposited this money into a certificate of deposit and that in November 1995, she used approximately $7,000 from this account to pay off the real estate mortgage on the parties' Harrison home. Carla further testified that she then transferred the remaining money into a money market account and that she used all but approximately $230 of the remaining amount for a downpayment on her Iowa home. The district court found that Carla used the money to pay off the loan on the house in Harrison and that Carla was entitled to the proceeds of her inheritance certificate of deposit, as it was nonmarital property.

Joe argues that the bank records in the record do not support Carla's testimony that she used a portion of her inheritance to pay off the Harrison home loan. He argues that because Carla cannot trace the inherited money, her inheritance should have been considered marital property. In this regard, the bank records do not coincide with Carla's testimony regarding the date the Harrison loan was paid in full. The records do indicate, however, that a payment was made from the certificate of deposit in November 1996 and that the remaining money was transferred to one money market account and then subsequently to another. The records also indicate that Carla made payments out of this account for her Iowa home. We have already determined that the district court did not abuse its discretion in awarding the Harrison home to Carla. With respect to the tracing argument,

there is sufficient evidence in the record to substantiate Carla's testimony regarding the expenditure of her inheritance. Although we note that the district court incorrectly referred to the certificate of deposit containing Carla's inheritance as an existing asset, the court did not abuse its discretion in finding Carla's inheritance to be nonmarital property, nor did it abuse its discretion in awarding the Harrison property to Carla.

### ATTORNEY FEES

The court ordered Joe to pay $2,000 of Carla's attorney fees. Joe argues that such an award was improper and that it was merely a penalty to him for receiving his law degree, as Carla was awarded both alimony and a larger share of the marital assets. On cross-appeal, Carla argues that the court should have awarded her $3,611.52, the entire amount requested.

■ In dissolution proceedings, an award of attorney fees depends on a variety of factors, including the amount of property and alimony awarded, the earning capacity of the parties, and the general equities of the situation. *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995); *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). Considering the general equities of this case, the district court did not abuse its discretion in awarding $2,000 in attorney fees to Carla.

### VALUATION OF LAW DEGREE

Carla's primary contention on cross-appeal is that the district court erred in not considering Joe's law degree as valuable marital property. She contends that while Joe obtained the degree, she worked, took care of the children, and gave up the benefits of a second income with the expectation that the law degree would provide the family a better standard of living in the future.

Darrell Eskam, a certified public accountant, testified via deposition that the value of Joe's law degree was approximately $80,000. Eskam valued the degree by comparing the lifetime earnings of a college graduate with the lifetime earnings of a person holding a law degree, reduced to present value. Carol Lockwood, also a certified public accountant, testified via deposition that it was very difficult to value a law degree because a degree was worth something only if it was used by an individual. Lockwood did not specifically dispute Eskam's method but

disagreed with his use of an average starting salary for an associate in Lincoln or Omaha, stating that the correct average should have considered Lincoln only. Utilizing Eskam's basic method, Lockwood testified that any value of the degree was approximately $40,000.

■ The overwhelming majority of jurisdictions that have addressed this issue have declined to expressly place a value on a professional degree. We agree with that view. See, *Guy v. Guy*, 736 So. 2d 1042 (Miss. 1999); *In re Marriage of Speirs*, 956 P.2d 622 (Colo. App. 1997); *Roberts v. Roberts*, 670 N.E.2d 72 (Ind. App. 1996); *Stevens v. Stevens*, 23 Ohio St. 3d 115, 492 N.E.2d 131 (1986). As Lockwood testified, the value of a professional degree is dependent upon its use by the individual, and any method of valuation is thus purely speculative. See *id*. We note, however, that § 42-365 requires a dissolution court to divide property and award alimony in a reasonable manner, having regard for, inter alia, the circumstances of the parties and the history of contributions to the marriage. Pursuant to this statutory language, the attainment by one spouse of a professional degree with aid from the other is one factor a district court may consider in the division of assets and award of alimony in a marital dissolution proceeding. On the facts and records of this case, the district court did not abuse its discretion in its division of the assets and its award of alimony.

## CONCLUSION

Both parties have filed motions for attorney fees on appeal. Because we have concluded that neither the appeal nor the cross-appeal has merit, we deny both parties' motions. Further, we note that review of this appeal was complicated by the lack of compliance with Neb. Ct. R. of Prac. 5 (rev. 2000) relating to the proper preparation of the bill of exceptions, a failure we attribute to neither party.

For the foregoing reasons, the district court did not abuse its discretion in awarding custody, child support, and alimony and in distributing the assets. The judgment of the district court is affirmed.

AFFIRMED.