OPINION OF THE COURT
John F. O’Donnell, J.
Both parties have filed objections to an order of a Hearing Examiner fixing support for the parties’ son, Charles. Pursuant to a property settlement agreement incorporated but not merged in their judgment of divorce, the respondent Fieramusca paid unallocated support until petitioner Marsh’s remarriage. She has remarried and the parties have stipulated that the Family Court proceedings should be treated as an initial determination of support.
The petitioner objects to the Hearing Examiner’s failure to include in respondent’s income: (a) contributions and internal buildup in the "Savings Plan for Salaried Employees of the Bethlehem Steel Corporation”, (b) the interest earned on a savings account owned by respondent and his present wife as joint tenants, and (c) the value of a company-provided car. Petitioner also objects to the Hearing Examiner’s direction that the parties share the cost of any uninsured medical expenses as opposed to assigning all of those to respondent as provided in the property settlement agreement.
The respondent objects to the Hearing Examiner’s failure to give him credit for the additional premium cost incurred as a result of his purchase of health insurance with greater benefits than he was required to purchase by the parties’ property settlement agreement. Respondent also objected to the Hearing Examiner’s failure to eliminate a clothing allowance, but petitioner stipulated that it was, in fact, eliminated.
The court has listened to the record of the December 7, 1990 and November 9, 1990 proceedings and reviewed the objections. There does not appear to be a need for further testimony or argument.
The "Savings Plan for Salaried Employees of the Bethlehem Steel Corporation”, which petitioner complains was not included as income to the respondent, was established by the company pursuant to section 401 (k) of the Internal Revenue Code. It is thus a "qualified plan”. This means that the employer is entitled to deduct its contributions, and that the employee’s contributions, as well as the plan’s earnings, escape taxation until they are distributed. (Internal Revenue *779 Code [26 USC] § 401 [a], [k] [2]; § 402 [a]; §§ 404, 501 [a]; 26 CFR 1.402[a]-l [a] [1] [i]; 1.404[a]-l [b].) Distributions prior to retirement are subject not only to the income tax normally assessed under the annuity rules (Internal Revenue Code § 72), but to a 10% additional tax as well (Internal Revenue Code § 72 [q]). The court is not aware of any published opinion relative to the issue of whether or not the contributions or earnings in such a plan should be included as "income” for purposes of calculating a parent’s basic child support obligation.
Section 401 (k) plans are commonly thought of as retirement plans. Respondent testified that he thought of it as such at the time of the divorce and considered it among the items to which petitioner waived her rights in exchange for his surrender of his interest in the marital home. (Contrary to petitioner’s assertion, there was unrefuted evidence presented that the plan existed at the time of the divorce.) The property settlement agreement states that petitioner waived her rights to any interest she had in respondent’s "pension” benefits. This plan is not, technically, a "pension” plan but, by definition, a profit-sharing or stock-bonus plan (Internal Revenue Code §401 [k]; 26 CFR 1.401-1 [b] [1]). Thus, the Hearing Examiner was correct in saying that it is unclear whether petitioner agreed to waive her rights in the plan or not. This is not dispositive of the matter, however.
The Hearing Examiner held that because she lacked jurisdiction to interpret the agreement, she was not allowed to decide if petitioner waived her rights to the plan, and refused to include respondent’s contributions to the plan in her calculations. Whether or not petitioner waived her rights in the plan is irrelevant. A waiver by the custodial parent of his or her ownership or distribution rights in an item of property does not automatically mean that Family Court cannot consider the noncustodial parent’s subsequent earnings from that property in determining the amount of income available for support of the parties’ child. For example, if petitioner had agreed in the context of the earlier divorce to give up her rights in the couple’s real property or stock by signing it over to respondent, the court would not be precluded from considering the rents or dividends from those now solely owned investments in figuring his income. A different concept should not be applied here. The petitioner is not claiming a property right in the plan. The only issue is respondent’s ability to pay support for his child.
*780 The fact that the Internal Revenue Service does not consider respondent’s contributions as income for tax purposes is not dispositive either. Veteran’s benefits, for example, are not considered income for tax purposes; but they are specifically mentioned in the statute as an element of income for the purpose of determining support (Family Ct Act § 413 [1] [b] [5] [iii] [e]). That statute says that the term "income” as used therein "shall mean, but shall not be limited to * * * gross * * * income as should have been or should be reported in the most recent federal income tax return.” (Family Ct Act § 413 [b] [5] [i]; emphasis added.) Thus the court clearly has discretion to consider items as "income” for purposes of calculating a parent’s "basic child support obligation” under the Child Support Standards Act even if they are not considered "income” under the Internal Revenue Code.
The information relative to the plan provided by respondent’s employer, petitioner’s exhibit 4 in evidence, makes it clear that participation is voluntary. This is critical. Respondent can contribute nothing, or he can contribute up to 15% of his gross salary. If respondent contributes nothing, the dollars involved are "income” under any definition. Within limitations, respondent is free to decide whether they are to be considered income for tax purposes. No such freedom can be allowed relative to the issue of child support, however. If respondent’s contributions to the plan did not count when calculating his basic child support obligation, he could unilaterally reduce the amount to be paid by him for support, at the expense of his child, in favor of preserving the amount of the reduction for his exclusive use and benefit. To allow this would be against public policy (cf., L 1989, ch 567, § 1). Therefore, the full amount of respondent’s contribution to the plan, less an amount equal to any additional withholding for FICA which would result from his nonparticipation, should be imputed to him as income for purposes of the Act. The court will not consider the employer’s contribution or the internal buildup of earnings in the plan, however. To do so would be unjust and inappropriate. These sums are contingent on respondent’s contributions. Unless he contributed they would not exist and, by virtue of the 10% additional tax imposed by Internal Revenue Code § 72 (q) on withdrawals prior to retirement, cannot be considered readily available. (Family Ct Act §413 [1] [¶] [4], [10].)
Each of the tenants of a joint savings account is presumed to own one half of the whole (Banking Law § 675). It *781 follows that, absent proof overcoming the presumption, each is entitled to one half of the income. Such income would be included in such person’s "gross (total) income as should have been or should be included in the most recent federal income tax return.” Thus, it is one of those items required by Family Court Act § 413 (1) (b) (5) (i) to be considered in determining the amount of income available to respondent for discharging his obligation of support. Petitioner met her burden of proving a prima facie entitlement to a percentage of the account by establishing its existence. Respondent then had the responsibility of going forward to rebut the presumption, if possible. He did not. Therefore, the amount of the interest on the account to which he is entitled should be included in calculating the amount of income available to respondent for purposes of determining his obligation.
The petitioner submits that the company car, which is provided to respondent for his personal as well as business use, should be deemed to provide additional income to the respondent which should be considered in calculating his basic child support obligation. Certainly, having the car available relieves respondent of the necessity of making payments to purchase a car himself, and Family Court Act § 413 (1) (b) (5) (iv) specifically allows the Hearing Examiner to consider this. Such considerations, though, is a matter of discretion. The statute says the court "may” attribute or impute income from it. The burden of proof is on the petitioner to establish the amount to be attributed.
In the instant case, petitioner elicited a stipulation as to the existence of the car and the fact that respondent pays the company $50 per month plus 8 cents per mile for personal use. Testimony was also given as to the amounts respondent paid for such use under this formula in several sample months. Petitioner now seeks to have the court impute to respondent’s income an amount equal to the 25 cents per mile allowed by the Internal Revenue Service as a deduction for business miles multiplied by the number of miles which would have been traveled by respondent going from home to office and back five days per week for the entire year. Respondent testified, however, that he rarely went to the office, but usually went directly to various jobsites from his home.
Assuming that the court should accept the simplistic formula offered by petitioner, the evidence was weak, both as to the question of whether and how often respondent went to the office and the number of months of recorded mileage reviewed. *782 No effort was made to establish the cost of buying or leasing an equivalent automobile, or to prove who paid for gas, oil, maintenance or insurance. The court will not "assume” facts which are not in the record. No effort was made, in the form of proposed findings, for example, to apportion these costs to business and personal use on a percentage basis. Obviously, if a car is used 100% for business, there is no net benefit and no imputable income. If, on the other hand, respondent had no other car, and was able to meet all of his personal needs using the company car, perhaps the net benefit to him would be the full cost of leasing, insuring, and maintaining a similar automobile regardless of the percentage of business versus personal miles. In other cases, perhaps the majority of them, the answer may lie somewhere between these examples.
While the statute allows income to be imputed as a result of the use of a company automobile for personal needs, it is a complex issue on which the petitioner has the burden of proof. In this case, that burden was not met. Thus, the determination of the Hearing Examiner not to impute any additional income to the respondent as a result of his use of the company-owned automobile must be sustained.
Respondent objects to the Hearing Examiner’s failure to give him credit for the additional premium costs incurred by him as a result of his voluntary purchase of better health insurance than required by the parties’ property settlement agreement. The property settlement agreement required a more basic policy, available from respondent’s employer without cost, and required respondent to pay 100% of any uninsured medical costs. Petitioner asks the court to reinstate that arrangement.
Looking at the matter solely from the point of view of the parties’ agreement, petitioner may be correct. We are not interested in who gets the benefit of the bargain from the point of view of the contract, however. That is a matter for Supreme Court to determine. The sole interest and authority of this court is in regard to support under the Family Court Act.
Section 413 (1) (c) (5) of the Family Court Act requires the court to "prorate each parent’s share of future reasonable health care expenses of the child not covered by insurance in the same proportion as each parent’s income is to the combined parental income.” The agreement, having been executed in 1983, does not comply with section 413 (1) (h) since it was *783 not entered into after the effective date of the new statute, and thus the parties did not "opt-out” of subdivision (1) (c) (5) by signing it.
Nowhere in the statute is there any specific authorization for giving respondent a credit for health insurance premiums paid. While the court is sympathetic to respondent’s concerns, the Legislature, in enacting section 413 (1) (c) (5), has determined what is just and appropriate in the usual case where there are uninsured health care expenses. The court is unable to find sufficient evidence in this record to reach a different conclusion pursuant to subdivision (1) (f) and (g). Therefore, the order of the Hearing Examiner should be modified to require apportionment in accordance with the statute.