In the Interest of D.R.V.
and D.G.A., Children,

and Concerning G.A., Petitioner–
Appellant,

and

C.V., Respondent–Appellee.

No. 93CA1499.

Colorado Court of Appeals,
Div. V.

Oct. 20, 1994.

Tracey M. Porter, guardian ad litem.

Jon Slaughter Pelegrin & Associates, P.C., Jon Slaughter Pelegrin, Lakewood, for petitioner-appellant.

C.V., pro se.

Opinion by Judge TAUBMAN.

In this action, certified to the juvenile court by stipulation of the parties, G.A. (father) appeals from the trial court's permanent order regarding child support, attorney fees, and grandparent contact. We affirm in part, reverse in part, and remand for further findings.

In this case, father sought a determination of paternity, and custody and visitation were fiercely contested. The proceedings included the filing and dismissal of a dependency and neglect action regarding C.V. (mother). The juvenile court determined that father was the father of D.R.V. and D.G.A. and granted him temporary and permanent custody.

Temporary orders were initially entered in September 1989, *nunc pro tunc* July 1989, awarding father temporary custody but nevertheless ordering him to pay mother $200 per month because she would have physical custody of the children more than 25 percent of the overnight periods and would incur substantial day care expenses. At that time, father enjoyed substantial financial assistance from his parents, and mother was also expected to incur the cost of her own legal representation. That order was stayed on September 24, 1990, and father moved to modify it in October 1990.

In December 1991, the magistrate, in a bench ruling, issued further temporary orders, requiring that mother pay father $500 per month child support for December 1991, $612 per month beginning January 1992, and $1,200 in arrearages from September 24, 1990, through December 1991. After this order was reduced to writing, the trial court, in response to mother's motions, entered a stay.

Later, in response to father's April 1992 motion for child support and related matters, the trial court entered orders in April and June 1992 that all pending motions would be heard in August 1992, along with the custody issues. The seven-day hearing on custody and visitation began in August 1992 and ended in December 1992.

Based upon mother's earnings of approximately $2426 per month and father's earnings of $1359 per month, as well as the costs for day care and the children's psychotherapy, the court determined that beginning August 1993 $400 per month was an appropriate child support figure until father obtained housing separate from his mother, which he was required to do within six months. The court ordered child support of $700 per month thereafter.

Additionally, the trial court reaffirmed its August 1992 interim order for child support, which applied from that date until July 1993. It also vacated the magistrate's temporary orders for child support, finding that no child support should be paid between October 1990

and July 1992, since father had no housing expenses during this period.

Father appeals from the interim order for child support entered in August 1992 and the permanent order of July 1993.

## I. Child Support

Father first contends that the child support orders failed to provide for the reasonable needs of the children.

### A.

Father asserts that the trial court's permanent and interim orders for child support significantly deviated from the child support guidelines and, therefore, constituted an abuse of discretion. He further contends that the juvenile court erred as a matter of law in not reconciling two potentially conflicting statutes concerning the determination of child support in paternity cases. We remand for further findings.

Section 19–4–116(6), C.R.S. (1994 Cum. Supp.) provides that, in determining the amount to be paid by a parent for the support of a child and the period during which the duty of support is owed, a court enforcing the obligation of support must consider all relevant factors, including as one of eleven, the child support guidelines, as set forth in § 14–10–115, C.R.S. (1994 Cum.Supp.). Furthermore, § 19–4–129, C.R.S. (1994 Cum. Supp.), added in 1988, provides that the provisions of § 14–10–115 *shall* apply to all child support obligations, established or modified as part of any paternity proceeding, whether filed on or subsequent to July 1, 1988.

Father argues that the mandatory language found in the child support guidelines indicates that it was the intent of the General Assembly that the trial court presume, unless the presumption is rebutted, that the child support obligations must be set in the amount specified in the schedule. He further argues that the findings are insufficient to justify the magnitude of the deviation here from the presumed amount of support due under the child support guidelines. We agree in part with this argument.

■ Construction of a statute is a matter of law. *In re Marriage of Van Inwegen,* 757 P.2d 1118 (Colo.App.1988). If possible, a statute should be interpreted so as to give consistent, harmonious effect to all of its parts. *In re Marriage of Davisson,* 797 P.2d 809 (Colo.App.1990). Two statutes concerning the same subject are to be read together to the extent possible so as to give effect to the intent of the General Assembly. *L.D.G. v. E.R.,* 723 P.2d 746 (Colo.App.1986). When statutes on the same subject are potentially conflicting, the court must reconcile them, if possible, to avoid an inconsistent or absurd result. *In re Marriage of Dureno,* 854 P.2d 1352 (Colo.App.1992).

Furthermore, to the extent that the language of two statutes conflicts, the more recently adopted is controlling. Sections 2–4–206 and 2–4–301, C.R.S. (1980 Repl.Vol. 1B). *See In re Marriage of Wall,* 851 P.2d 224 (Colo.App.1992), *aff'd,* 868 P.2d 387 (Colo.1994).

■ To harmonize the potential conflicts between § 19–4–116(6) and § 19–4–129, we conclude that, when determining child support in a paternity proceeding, the juvenile court must initially apply the child support guidelines to determine the presumed amount of support. *See In re Marriage of Greenblatt,* 789 P.2d 489 (Colo.App.1990). However, the court may deviate from the presumed amount of support based upon other factors, including those listed in the child support guidelines or the eleven factors listed in § 19–4–116(6), so long as it enters findings that allow this court and the parties to discern the reasons for the deviation. This interpretation avoids an inconsistent result while also giving greater weight to the more recently adopted § 19–4–129.

■ Here, the trial court recognized that § 19–4–116(6) lists the criteria to be used in establishing support in a paternity action and that the child support guidelines are only one criterion of eleven. It also found that father had no housing expenses for the children while mother did and that such significant disparity in expenses justified deviation from the guidelines.

Nevertheless, we are unable to conclude whether the trial court determined a presumed amount of child support, and, if so, whether it considered the number of overnight visitations, the presumed amount of support, or the extent of the deviation that resulted from the ultimate award. *See* § 14-10-115(3)(a), C.R.S. (1994 Cum.Supp.) (when deviating from child support guidelines, court must make findings specifying reasons for deviation and presumed amount of child support without deviation). Accordingly, this matter must be remanded to the trial court for further findings to determine the presumed amount of child support and the basis and amount of any deviations under the child support guidelines or § 19-4-116(6).

### B.

■ For the same reasons, we remand to the trial court for further findings concerning its determination that mother was relieved of her obligation to pay temporary child support between October 1990 and July 1992. Again, the trial court on remand is directed to make findings concerning the presumed amount of child support and the basis for any deviations from the child support guidelines or § 19-4-116(6) during this period.

### II. Attorney Fees

■ Father next contends that the trial court erred in failing to apportion his attorney fees and the expert-fee costs between the parties. We disagree.

Section 19-4-117, C.R.S. (1994 Cum.Supp.) provides authority for the court to apportion between the parties to a parentage action the reasonable fees of counsel, experts, the child's guardian ad litem, and other costs of the action. A division of this court has interpreted the former version of this statute having identical language, as granting the trial court broad discretion in exercising this authority. *See L.D.G. v. E.R., supra.*

Here, the trial court found that father sought contribution for his attorney fees from the mother when mother had also incurred her own fees for some time during the proceedings. It also found with record support that the fees sought by the father were commingled with the fees for representing, or at a minimum for communicating with, the paternal grandparents, whose interests appeared to be identical to father's. Therefore, the court concluded that it was not appropriate for the mother to be responsible for the grandparents' fees.

The court also found that the protracted nature and high costs of fees resulted from the parties' ceaseless arguments even after orders had been entered, that both parties were equally responsible, and that both were working. The court therefore concluded that, with one exception, the parties should be responsible for their own fees.

In addition, the record shows that the income of both parties' fluctuated significantly during the five years while these proceedings were pending. Accordingly, we conclude that the court's order was within its wide discretion, and we will not substitute our judgment for that of the trial court.

### III. Children's Contact with Grandparents

Lastly, father contends that the trial court's order limiting the children's contact with their paternal grandparents was error.

He asserts that his mother has obtained alternative housing as of December 20, 1993, and does not dispute that portion of the order that required him to obtain separate housing from his mother. However, father argues that the order limiting his parents' contact with the children to six hours per week without exception for holidays, family vacations, or sick child day care violates his and the children's right to family association and imposes unnecessary financial hardship when resources are limited. We reject father's contentions.

■ Grandparent rights of visitation are derived from statute. *People in Interest of N.S.*, 821 P.2d 931 (Colo.App.1991). Under § 19-1-117(4), C.R.S. (1994 Cum.Supp.), the trial court may make an order modifying or terminating grandchild visitation rights whenever such order would serve the best interests of the children. *See Kudler v. Smith*, 643 P.2d 783 (Colo.App.1981).

We initially conclude that father does not have standing to argue the inadequacy of the visitation rights granted to his parents. *See* § 19–1–117(1), C.R.S. (1994 Cum.Supp.) (any grandparent may seek an order granting reasonable grandchild visitation rights). *See Maul v. Shaw*, 843 P.2d 139 (Colo.App.1992). Similarly, father lacks standing to assert rights on behalf of his children, who are represented by a guardian ad litem. *See* § 19–4–110, C.R.S. (1994 Cum. Supp.) (parent cannot assert rights of child; only guardian ad litem may do so).

Accordingly, we only consider father's remaining contention that his constitutional and statutory rights to "family privacy, family intimacy, and family management" were abridged by the grandparent visitation order.

The judgment of the trial court is presumed to be correct, and it is the appellant's duty to provide a complete record from which we can determine whether error occurred. *In re Marriage of Ebel*, 874 P.2d 406 (Colo.App.1993).

Here, the father did not include as part of the record on appeal a transcript of the hearing regarding custody. Furthermore, the limited record certified in this appeal does not show that father raised his constitutional arguments before the trial court. Accordingly, we do not address the merits of those arguments.

The portions of the order concerning child support are reversed, and the cause is remanded for further findings consistent with the views set forth herein. The portion of the order concerning contact with the grandparents is affirmed. The current orders for child support shall remain in effect pending further order of court. In all other respects, the court's order is affirmed.

RULAND and BRIGGS, JJ., concur.