The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 10, 2019

**2019COA153**

**No. 2018CA915 *In the Interest of NJC* — Family Law —
Juvenile Court — Uniform Parentage Act — Modification of
Child Support — Deferred Compensation**

A division of the court of appeals holds that deferred

compensation in a nonqualified retirement plan is not income for

child support purposes under the Uniform Parentage Act, section

19-4-101 to 130, C.R.S. 2019. Applying the definition of "income"

in section 14-10-115 of the Uniform Dissolution of Marriage Act,

the division concludes that the father's deferred compensation is

not income because he did not have the ability to use it to pay his

expenses, including child support.

The division also concludes that the magistrate did not abuse

his discretion in determining not to reallocate to father ninety

percent of the costs paid for parental responsibilities evaluations.

In addition, the division affirms the trial court's decision not to

reconsider mother's request for attorney fees paid by maternal grandfather that were incurred in connection with father's motion to modify parenting time.

Court of Appeals No. 18CA0915
Douglas County District Court No. 12JV77
Honorable Natalie T. Chase, Judge

In re the Parental Responsibilities Concerning N.J.C., a Child,

and Concerning N.E.,

Appellant,

and

V.J.C.,

Appellee.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Freyre and Pawar, JJ., concur

Announced October 10, 2019

Fairfield and Woods, P.C., Lee Katherine Goldstein, Michael R. McCurdy, Denver, Colorado, for Appellant

James J. Keil, Jr., Denver, Colorado, for Appellee

¶ 1     As a matter of first impression, N.E. (mother) urges us to conclude that deferred compensation in a nonqualified plan[1] is income for child support purposes if it is being earned during a period when a parent is obligated to pay child support. We disagree with her arguments, and therefore affirm the juvenile court's order adopting the magistrate's order modifying mother's child support award from V.J.C. (father). We also affirm the juvenile court's order denying mother's request to reallocate costs paid for parental responsibilities evaluations (PRE).

¶ 2     However, we reverse the portion of the juvenile court's order denying mother's request for attorney fees, and we remand the case to the juvenile court for it to determine the amount. We further remand for the juvenile court to consider mother's request for appellate attorney fees under section 19-4-117, C.R.S. 2019.

---

[1] A "nonqualified deferred-compensation plan" is "[a]n unfunded compensation arrangement, frequently offered to executives, that defers compensation and the recognition of its accompanying taxable income to a later date. . . . It is termed 'nonqualified' because it does not qualify for favorable tax treatment" under the Internal Revenue Code. Black's Law Dictionary 663 (11th ed. 2019).

## I. Appellate Standard of Review

¶ 3     This case arises out of the Uniform Parentage Act (UPA), sections 19-4-101 to -130, C.R.S. 2019.  Magistrates may preside over UPA actions, but parties have the right to seek a judge's review of the magistrate's findings and rulings.  § 19-1-108(1), (4)(b), (5.5), C.R.S. 2019.

¶ 4     "We defer to the magistrate's and district courts' findings of fact if they are supported by the evidence and we review conclusions of law de novo."  *In re B.J.*, 242 P.3d 1128, 1132 (Colo. 2010).

## II.  Father's Deferred Compensation Plan

### A.  Relevant Facts

¶ 5     Mother and father are the unmarried parents of one child, N.J.C.  In 2013, and as part of the initial paternity proceeding in this case, father's child support calculation was based on the salary he earned working as a cardiologist for his own medical practice.

¶ 6     In 2016, father closed his practice and accepted a job with Healthy Connections, Inc. (HCI), a health care center providing medical, dental, and outreach services to impoverished communities.  Believing that father's income had gone up at his

new job, mother moved to increase child support. Father, however, responded that his income had actually decreased.

¶ 7        Evidence presented at a hearing on mother's motion showed that father's compensation package with HCI consisted of a $150,000 annual salary and $200,000 of yearly deferred compensation in a nonqualified plan. Father, who was then fifty-two years old, testified that he would only receive the deferred compensation after he retired from HCI at age sixty-five. HCI's CEO, his brother, agreed that father "does not receive — physically receive $200,000 above his salary," and he described the deferred compensation as "an obligation at a future date and time for [father's] benefit providing that he meets the criteria after his retirement."

¶ 8        The CEO explained that the deferred compensation plan allowed HCI to attract and retain qualified medical doctors, like father, that it could not otherwise afford. He testified that half of the ten to thirteen medical doctors on HCI's staff were employed under the deferred compensation plan. According to the CEO, while each plan was tailored to the employee, they all had the same payout structure — the employee had to retire from HCI at a certain

age before he or she would receive any deferred funds, which would then be paid over ten years. As of the hearing date, the CEO said that the deferred compensation plan was unfunded; in fact, the CEO stated there was not even an account established with which to pay deferred compensation.

¶ 9 Regarding father's specific deferred compensation plan, the CEO submitted a letter to father's counsel (admitted at the hearing as Exhibit A) detailing that father had no control over the funds or the plan; the deferred amounts belonged to HCI and were not protected in case of insolvency or creditor claims; the deferred amounts were subject to forfeiture if father was fired, quit, or retired before age sixty-five; father would not be fully vested until he worked at HCI for five years; and the funds were not taxable until received by the employee.

¶ 10 Arguing that it was significant that father earned the money, even if he did not actually receive it, mother asked the magistrate to include the deferred compensation as income to father. The magistrate declined to do so, based on the restrictive provisions of father's plan described above. The magistrate then modified

father's child support obligation, including in father's income only his salary and nominal dividend and interest income.[2]

¶ 11    The juvenile court judge adopted the magistrate's decision not to include the deferred compensation, pointing out the magistrate's reasoning that father could not contribute to the plan, had no control over the funds, and had no guarantee he would ever receive the money.

## B. Deferred Compensation is Not Income

¶ 12    Section 14-10-115, C.R.S. 2019, applies to child support obligations established or modified under the UPA. § 19-4-129, C.R.S. 2019. We review child support orders for an abuse of discretion. *In re Marriage of Garrett*, 2018 COA 154, ¶ 8, 444 P.3d 812, 815. However, we review de novo the legal standard applied by the court. *In re Marriage of Tooker*, 2019 COA 83, ¶ 12, 444 P.3d 856, 859.

---

[2] The magistrate also found that father's decision to leave his former employment and work with HCI was a good faith career choice and was not intended to deprive N.J.C. of child support or unreasonably reduce the support available to him.

¶ 13    A child support calculation begins with a determination of the parties' combined gross incomes. *See* § 14-10-115(1)(b)(I), (5)(a). A parent's gross income for child support purposes is "income from any source[.]" § 14-10-115(5)(a)(I).

¶ 14    The statute, however, neither specifically includes nor excludes "deferred compensation" as gross income available to a parent. *See id.* (nonexclusive list of income included in definition of gross income); § 14-10-115(5)(a)(II) (excluding certain income from definition of gross income).

¶ 15    No Colorado case has addressed this specific issue. Thus, we look to other Colorado appellate decisions addressing whether financial benefits or contributions not specifically defined by the statute are income for child support purposes. We then consider similar decisions from other states.

¶ 16    *In re Marriage of Mugge*, 66 P.3d 207, 210 (Colo. App. 2003), addressed whether an employer's pension contributions, not yet distributed to the employee, were gross income for child support purposes. The division decided that such pension contributions were not because "the employers determined the amounts of their pension plan contributions and the employees did not have the

6

option of directly receiving the amounts as wages." *Id.* at 211. Until distribution of the funds actually occurred, the division concluded, the employer contribution was not income. *Id.*

¶ 17    The division in *In re Marriage of Davis*, 252 P.3d 530, 534 (Colo. App. 2011), similarly concluded that employer contributions to a parent's 401(k) and health insurance plans were not income for child support purposes. Like *Mugge*, the division reasoned that unrealized employer contributions are income only if the employee has the option to receive the contributions as wages and use them for general living expenses. *Id.* at 535.

¶ 18    Most recently, the division in *Tooker*, ¶¶ 1-2, 444 P.3d at 858, considered whether tuition assistance and a book stipend paid through a GI Bill were income for child support and maintenance purposes. The district court concluded that the benefits were not income, since they were paid directly to the college and the parent could not use them for daily living or discretionary expenses. *Id.* at ¶¶ 9-10, 444 P.3d at 859.

¶ 19    In reviewing the district court's decision, the *Tooker* division found *Davis* and *Mugge* "instructive":

> The principle that emerges from these cases is that, to be included as gross income for purposes of maintenance and child support, benefits received by an individual (if not otherwise excluded from the definition of gross income in the maintenance and child support statutes) must be available for the individual's discretionary use or to reduce daily living expenses.

*Tooker*, ¶ 18, 444 P.3d at 860.

¶ 20    Following that principle, the division upheld the district court's conclusion that the tuition and book stipend benefits were not income because the parent could not receive the benefits personally or use them to pay expenses. *Id.* at ¶¶ 19-21, 444 P.3d at 860-61.

¶ 21    Last, the supreme court in *In re A.M.D.*, 78 P.3d 741, 745 (Colo. 2003), discussed whether all or only a portion of the principal of a monetary inheritance should be included in gross income for child support purposes. The *A.M.D.* court directed the district court to examine the recipient's use of the inheritance to determine how much should be included as income for child support. *Id.* at 746. It held that the principal was income only "[i]f the recipient uses the principal as a source of income either to meet existing living expenses or to increase the recipient's standard of living." *Id.*

8

¶ 22    We agree with the principle arising from *A.M.D., Tooker, Davis,* and *Mugge*, and conclude that deferred compensation is income only if the parent has the ability to use it to pay his or her expenses, including child support. *See A.M.D.,* 78 P.3d at 746; *Tooker,* ¶¶ 18, 20-21, 444 P.3d at 860-61; *Davis,* 252 P.3d at 535; *Mugge,* 66 P.3d at 211.

¶ 23    This decision accords with decisions made in other states. *See, e.g., Severn v. Severn,* 567 S.W.3d 246, 262-63 (Mo. Ct. App. 2019) (Deferred compensation is not income because there is "no discernible way in which the contributions made to the deferred compensation plan would be available to [the parent] in satisfying any child support obligation."); *Jordan v. Brackin,* 992 P.2d 1096, 1100 (Wyo. 1999) (income does not include mandatory deferred compensation that is not available until death, termination of employment, or unforeseeable emergency because it does not provide the parent with money); *cf. Milinovich v. Womack,* 343 P.3d 924, 926, 930 (Ariz. Ct. App. 2015) (monies withdrawn from investment account funded with deferred compensation was income because the account was established with the specific purpose of using the deferred compensation to pay day-to-day living expenses).

¶ 24 Turning to father's deferred compensation plan, we conclude that it is not income. Father does not voluntarily contribute to the plan and he has no control over the funds or the plan's administration. He does not currently receive money from the plan and may not invade the account, when it is funded, to withdraw funds as he chooses. Father will receive the deferred compensation funds only after he retires from HCI at age sixty-five and, even then, there is no guarantee father will receive any of the funds. Because father only has a "promise" to receive the deferred compensation when he turns sixty-five, which in no way assists him in paying his expenses at the present time, father's deferred compensation plan is not income.

¶ 25 We have reviewed the out-of-state authority cited by mother to support her argument that deferred compensation should be considered income for child support purposes. However, we find those cases factually distinguishable, because they involve employees who voluntarily chose to defer or redirect their receipt of income. *See Jones v. Jones*, 883 So. 2d 207, 211-12 (Ala. Civ. App. 2003) (payments parent chose to redirect to health insurance premiums instead of to his paycheck); *Ennis v. Venable*, 689 So. 2d

165, 166 (Ala. Civ. App. 1996) (wages voluntarily deferred to a retirement account); *Bergstrom v. Lindback,* 779 P.2d 1235, 1237 (Alaska 1989) (amounts voluntarily deposited into a deferred income compensation account); *Leineweber v. Leineweber,* 102 A.3d 827, 833 (Md. Ct. Spec. App. 2014) (same); *Marsh v. Fieramusca,* 569 N.Y.S.2d 1012, 1014-15 (Fam. Ct. 1991) (amounts voluntarily deposited in a retirement plan instead of taken as wages); *Murray v. Murray,* 716 N.E.2d 288, 293-94 (Ohio Ct. App. 1999) (concluding that unexercised stock options were gross income because the recipient had complete discretion to exercise the options every twelve months and realize the income).  Unlike in these cases, father did not receive any income that he could defer.

¶ 26    We are also not persuaded by mother's argument that excluding deferred compensation from a parent's gross income will encourage a parent to manipulate his or her salary in order to shirk a child support obligation.  While that may occur in some cases, the magistrate did not conclude that this is what happened here.

¶ 27    True, HCI's CEO is father's brother.  Even so, the record shows that HCI's board of directors decided to hire a qualified cardiologist at about the same time that changes in the health care

11

system prompted father to shut down his medical practice. Father was one of at least five medical doctors employed under HCI's deferred compensation plan, and there is no indication that he specifically asked to be part of the plan. Nor is there evidence that father accepted the deferred compensation plan in lieu of receiving a higher salary or receiving some other immediately payable benefit from HCI.

¶ 28 We are also unpersuaded by mother's argument that any decision to exclude deferred compensation as income will unfairly deprive children of the support to which they are entitled. The legislature has expressed an intention that child support orders be "subject to the ability of parents to pay[.]" § 14-10-115(1)(b)(I). Calculating child support based on a source of money that a parent does not now, and may *never*, receive would frustrate that intention.

¶ 29 Accordingly, because father's deferred compensation is not income, the magistrate correctly excluded it from father's gross income when modifying child support. Because mother does not raise any other challenges to the child support modification, we

12

affirm that portion of the juvenile court's order upholding the magistrate's child support modification.

### III. Attorney Fees and Costs Requested in Connection With the Parenting Time Modification Hearing

¶ 30 Mother contends that it was an abuse of the magistrate's discretion not to reallocate to father 90% of the PRE costs and to refuse to consider her request for attorney fees arising in connection with father's motion to modify parenting time. We disagree.

### A. Background

¶ 31 Father sought to increase his parenting time in 2015. On mother's motions, the magistrate ordered a PRE and supplemental PRE to address the disputed parenting time issues. Before the parenting time hearing, the magistrate issued the following order:

> [T]he parties must file a JOINT Trial Management Certificate (JTMC) in compliance with C.R.C.P. 16.2(h), which will include each party's position on every issue for which the parties are seeking a ruling. Failure to include an issue in the JTMC may preclude that issue from being heard.
>
> . . . .
>
> The judge will read the JTMC prior to the hearing and the JTMC will be your Opening

Statement. The Court should be able to fully understand your client's position on issues by reading the JTMC.

¶ 32 The parties' JTMC averred that the only disputed issue was father's request to increase parenting time. Under that part of the JTMC alerting the court to "Other Matters," the parties wrote "None." The parties stated that they did not exchange sworn financial affidavits because "there are no financial issues presently before this [c]ourt."

¶ 33 During the parenting time hearing, the parties and magistrate decided to postpone issues concerning "all financial matters" to a future hearing. The magistrate noted in her minute order that she "retains and reserves jurisdiction to address reallocation of PRE costs/fees once financial affidavits have been updated."

¶ 34 After the magistrate issued her parenting time modification order, mother moved to modify child support (the same motion referenced in Part II.A, above). In that motion, mother asked the magistrate to reallocate to father the costs she paid for the PREs and to award her the attorney fees and costs she "incurred in this matter." The magistrate prohibited mother from raising at the child

14

support hearing any attorney fees request relating to the parenting time hearing.

¶ 35     Mother again raised her requests for fees and costs arising from the parenting time hearing in the JTMC filed before the child support hearing.  She argued that the parties had unequivocally agreed during the parenting time hearing to postpone "all" financial issues, which included her attorney fees and PRE reallocation requests.

¶ 36     Once more, the magistrate declined to revisit the issue of attorney fees from the parenting time hearing at the child support hearing.  The magistrate then denied mother's request to reallocate the PRE costs to father.  The juvenile court upheld these findings and conclusions on review.

B.  The Magistrate Did Not Abuse Her Discretion

¶ 37     We address that part of mother's argument concerning the reallocation of PRE costs first.

¶ 38     Other than state that the magistrate should have reallocated the PRE costs, mother's opening brief analyzes only the issue of whether the magistrate erred by refusing to reconsider her attorney fees request.  Absent any discussion concerning the PRE fees

15

reallocation, we deem the argument abandoned and decline to consider it. *See In re Marriage of Marson*, 929 P.2d 51, 54 (Colo. App. 1996); *see also People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) (reviewing court will not consider bald legal proposition presented without argument or development).

¶ 39 Turning to the attorney fees argument, we discern no abuse of discretion in the magistrate's refusal at the child support hearing to consider mother's request for attorney fees arising in connection with the parenting time hearing.

¶ 40 The magistrate ordered the parties to comply with C.R.C.P. 16.2(h) and file a JTMC containing "*every* issue for which the parties are seeking a ruling." (Emphasis added.) *See* C.R.C.P. 16.2(a) (the Rule 16.2 case management procedures applicable to domestic relations proceedings may govern juvenile or paternity cases if the court so orders). Mother did not comply with that order by specifying that she sought an award of attorney fees in connection with the parenting time hearing. Thus, we see no abuse of discretion in the magistrate's refusal to consider the issue at a later hearing. *See In re Marriage of Cardona*, 321 P.3d 518, 527 (Colo. App. 2010) (courts have considerable discretion to impose

appropriate sanctions for noncompliance with C.R.C.P. 16.2), *aff'd on other grounds*, 2014 CO 3.

¶ 41 Mother does not convince us that the parties otherwise agreed to postpone this issue to a later date. The record on this issue is limited to a transcript excerpt from the parenting time hearing and the magistrate's minute order. To be sure, the magistrate's written minute order specified reserving jurisdiction over "PRE costs/fees." Read together, they show only a discussion about the PRE fees and costs and father's anticipated motion to modify child support. There is no reference to attorney fees.

### IV. Attorney Fees and Costs Incurred in Connection With the Child Support Hearing

¶ 42 Mother contends that the magistrate abused her discretion by requiring each party to pay his or her own attorney fees arising in connection with her motion to modify child support. We disagree.

¶ 43 Under section 19-4-117, the court shall order reasonable fees of counsel to be paid by the parties in proportions and at times determined by the court. We will not disturb a court's attorney fees determination under this section unless it clearly abuses its discretion. *W.C. in Interest of A.M.K.*, 907 P.2d 719, 723 (Colo. App.

17

1995).  "A juvenile court abuses its discretion 'when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.'"  *People in Interest of A.N-B.*, 2019 COA 46, ¶ 9, 440 P.3d 1272, 1276 (citation omitted).

¶ 44     Section 19-4-117 is silent as to what factors the juvenile court may consider when addressing an attorney fees request under this section.  *Cf.* § 14-10-119, C.R.S. 2019 (requiring court to consider "the financial resources of both parties").  However, the parties' finances, the protracted nature of litigation, and the high costs of fees resulting from their "ceaseless arguments" may be relevant considerations.  *See In Interest of D.R.V.*, 885 P.2d 351, 354 (Colo. App. 1994); *see also S.F.E. in Interest of T.I.E.*, 981 P.2d 642, 650 (Colo. App. 1998).

¶ 45     The magistrate here looked at these factors.  She made findings about the parties' financial circumstances, including father's higher income but also mother's (1) failure to "make any reasonable effort to obtain full time gainful employment"; (2) ability to earn at least a $3000 monthly income; (3) receipt of $2184 monthly in cash gifts, interest and dividends, and rental income; and (4) being "voluntarily support[ed]" by her father (maternal

grandfather) "to the extent that she cannot or will not meet her own financial needs." As to this last factor, the magistrate further found that maternal grandfather had paid $16,000 toward mother's credit card bills and more than $512,000 of her attorney fees. The magistrate also found that both parties had "over litigated and under resolved the post decree issues in this case and have incurred excessive amounts of attorney's fees and costs in doing so."

¶ 46 These findings sufficiently support the magistrate's decision for both parties to bear their own fees. The order is not manifestly arbitrary, unreasonable, or unfair, and, therefore, we affirm it on review. *See W.C.*, 907 P.2d at 723.

¶ 47 Insofar as mother argues it, nothing in section 19-4-117 prohibited the magistrate from considering maternal grandfather's financial contributions. *Cf. Davis*, 252 P.3d at 538 (allowing court to consider wife's new husband's financial contributions to wife's living expenses when assessing her economic circumstances under section 14-10-119).

¶ 48 Accordingly, we reject mother's argument that the magistrate issued her order "in the complete absence of any information about

[maternal grand]father's ability to pay these amounts." Any fault in this regard lay at mother's feet.

¶ 49    Despite the apportionment of fees being a disputed issue for the child support hearing, and knowing that father specifically objected to paying mother's fees because maternal grandfather had already paid them, mother chose not to call maternal grandfather as a witness at the hearing. If mother wanted the magistrate to consider maternal grandfather's financial ability to pay her attorney fees, she should have presented such evidence to the magistrate. *See In re Marriage of Krejci*, 2013 COA 6, ¶ 23 (parties must present relevant evidence to the court, and their failure to do so does not provide grounds for reversal); *see also In re Marriage of Eisenhuth*, 976 P.2d 896, 901 (Colo. App. 1999) (the court is required to consider the evidence presented to it; it does not act as a surrogate attorney).

¶ 50    We reject mother's argument that by failing to make father pay for her attorney fees, the magistrate was perpetuating the parties' financial disparity. Section 19-4-117 is not intended to equalize the parties' financial status. *Cf. In re Marriage of Anthony-Guillar*, 207 P.3d 934, 944 (Colo. App. 2009) (the intention of an attorney fees

award under section 14-10-119 is to equalize the parties' financial status). Rather, the section provides that "The court shall order reasonable fees of counsel . . . and other costs of the action . . . to be paid by the parties in proportions and at times determined by the court." § 19-4-117. In awarding attorney fees, the court may consider the existing factual circumstances, like the parties' finances, the protracted nature of litigation, and the high cost of fees. *See In Interest of D.R.V.*, 885 P.2d 351, 354 (Colo. App. 1994).

¶ 51 Yet even if the intent of the section was to equalize the parties' financial status, an award of attorney fees payable from father to *maternal grandfather* in no way fosters the objective of ensuring financial equality between *father and mother*, especially given mother's testimony that she did not intend to repay maternal grandfather for his payment of attorney fees on her behalf. *See In re Marriage of Benjamin*, 740 P.2d 532, 533 (Colo. App. 1987) (awarding attorney fees to deceased wife's attorney does not equalize the parties' status).

¶ 52 Thus, we conclude that under section 19-4-117, mother is entitled to attorney fees, and we remand to the trial court to determine the amount.

¶ 53    Finally, we decline to consider the argument raised in a footnote in the reply brief that the magistrate erred by failing to reallocate the PRE costs based on the parties' assets. *See Simpson*, 93 P.3d at 555 (declining to consider arguments not raised until the reply brief). We are unpersuaded by mother's statement (also in the footnote) that she "cover[ed]" this argument in the opening brief, because nothing in the opening brief supports this statement. The argument summary, the argument heading, and the argument itself discuss *only* the apportionment of attorney fees following the child support hearing. *See id.* (refusing to consider contention presented in a footnote that was not set forth in the summary of argument or as an issue on appeal in the opening brief as required by C.A.R. 28(a)). In contrast, mother's prior argument (Part III, above) raised both the attorney fees and PRE issues arising from the parenting time hearing (even if we ultimately deemed the PRE argument abandoned).

## V.  Appellate Attorney Fees

¶ 54    Mother requests an award of her appellate attorney fees under section 19-4-117. Although we recognize father's objection that mother will continue to litigate as long as she is "bankrolled" by

maternal grandfather, we conclude that mother is entitled to appellate attorney fees and remand to the juvenile court to determine the amount, if any. *See* C.A.R. 39.1; § 19-4-117. However, we note that she is entitled only to those attorney fees that she paid. Thus, on remand, the juvenile court should consider whether mother's appellate attorney fees have been or will be paid by maternal grandfather or any other third party.

## VI. Conclusion

¶ 55     The order is affirmed, and the case is remanded to the juvenile court for consideration of mother's appellate attorney fees request.

JUDGE FREYRE and JUDGE PAWAR concur.